Lillie HOWARD, Plaintiff-Appellant,

v.

SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES OF the UNITED STATES, Defendant-Appellee.

No. 1113, Docket 84–6009.

United States Court of Appeals, Second Circuit.

Argued May 2, 1984.
Decided July 25, 1984.

Toby Golick, Legal Services for the Elderly, New York City, for plaintiff-appellant.

Kathleen A. Haggerty, Asst. U.S. Atty., Brooklyn, N.Y. (Raymond J. Dearie, U.S. Atty., E.D.N.Y., Patrick A. Northup, Asst. U.S. Atty., Brooklyn, N.Y., on the brief), for defendant-appellee.

Before FRIENDLY, MANSFIELD and KEARSE, Circuit Judges.

KEARSE, Circuit Judge:

Plaintiff Lillie Howard appeals from a judgment of the United States District Court for the Eastern District of New York, Thomas C. Platt, Jr., *Judge*, affirming the decision of the Secretary of Health and Human Services ("Secretary") requiring Howard to repay $2,747.80 in overpayments of Supplemental Security Income ("SSI") benefits received under the Social Security Act, 42 U.S.C. §§ 301–1397f (1976 & Supp. V 1981) (the "Act"), during the period April 1979 to March 1980. On appeal, Howard contends that substantial evidence does not support the Secretary's determination that she was at fault in receiving the overpayments because (1) she is elderly, illiterate, and confused; (2) her attorney timely notified the Social Security Administration ("SSA") of Howard's receipt of certain income in June 1979 that affected her eligibility for SSI benefits; and (3) even if she was at fault in receiving SSI benefits after June 1979, Howard could not be at fault with respect to pre-June 1979 benefits since she had no foreknowledge that she would receive extra income in June 1979. Finding merit only in the last contention, we affirm the district court's judgment in part, but vacate and remand for further administrative proceedings as to the SSI payments Howard received in the second quarter of 1979.

## I. BACKGROUND

### A. *The Events*

Howard began receiving SSI benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–1383, at the age of 70 in 1974. In 1958 she had applied to SSA for widow's benefits under Title II of the Act, 42 U.S.C. §§ 401–433. On June 21, 1979, while Howard was receiving monthly SSI benefits, she was notified that she would receive $13,206.40 in retroactive widow's benefits. She apparently received $9,966.53 of this amount in June 1979 and an additional $3,239.87 in August 1979. Howard promptly informed her attorney, who wrote to SSA on June 25 and again on August 8 asking for information as to how the widow's benefits had been calculated. Neither of counsel's letters to SSA had revealed that Howard was contemporaneously receiving monthly SSI benefits. Howard continued to receive monthly SSI checks.

On September 21, 1979, Howard filed a Statement for Determining Continuing Eligibility for SSI payments, which reported that she had a savings account containing "$5000–500," and a checking account containing "$1–500." In fact, on that date, Howard had $5,500 in her savings account and $1,673 in her checking account.

On November 30, 1979, Howard met for the first time with an SSA representative about her SSI eligibility, at which time she revealed her receipt of $13,206.40 in widow's benefits. She signed a written statement acknowledging that she had received approximately $10,000 of the widow's benefits in June 1979 and the rest in August 1979, and that she had been using the money to repair her house. As of November 30, Howard had $2,531.13 in her savings account, and $535 in her checking account. In March 1980, Howard's resources had been depleted below $1,500, and she was declared eligible to receive SSI payments again, effective March 1, 1980.

In October 1980, Howard was notified that she had received overpayments of SSI benefits for, *inter alia*, the period April

1979 through February 1980. The notice stated that repayment was required because Howard had failed to report on a timely basis that her resources exceeded the $1,500 limit. After waiver of the repayment was denied, initially and on reconsideration, a hearing was held before an Administrative Law Judge ("ALJ").

B. *The Hearing and the ALJ's Decision*

Howard was represented at the hearing by Toby Golick, Esq., the attorney who had, on her behalf, inquired of SSA in 1979 with respect to the calculation of the widow's benefits. Howard appeared confused at some points during the hearing, and the import of much of her testimony is unclear. She testified clearly, however, that she had conferred with her counsel following receipt of the widow's benefits and that her attorney told her that she had "too much money" to maintain her SSI eligibility and that she should spend the extra money as quickly as possible. Counsel argued at the hearing that the letters written to SSA questioning the computation of widow's benefits had constituted notice of the change in resources, but she acknowledged that the letters did not reveal that Howard was receiving SSI benefits or that the receipt of the widow's benefits increased Howard's resources to an amount in excess of the SSI eligibility limit.

The ALJ found that Howard was not without fault in causing the overpayment because she knew of the obligation to report the change in her resources, but failed to do so in a timely manner. He found that the letters from Golick did not constitute the required notice because they were not submitted for the purpose of giving notice and were not directed to the attention of those responsible to record changes in the income and resources of SSI recipients. He concluded that Howard could not meet her burden by "notification at random or by implication," (Hearing Transcript at 16),

and found that the request for waiver of repayment should be denied.

The Secretary adopted the decision of the ALJ as her final decision, and the Appeals Council denied Howard's request for review. Howard then commenced this action in the district court. Both parties moved for judgment on the pleadings, and the district court granted the Secretary's motion on the ground that substantial evidence supported her decision. This appeal followed.

## II. DISCUSSION

Overpayments of SSI benefits are governed by 42 U.S.C. § 1383(b)(1), which provides, in pertinent part, as follows:

The Secretary shall make such provision as he finds appropriate in the case of payment of more than the correct amount of benefits with respect to an individual with a view to avoiding penalizing such individual or his eligible spouse who was without fault in connection with the overpayment, if adjustment or recovery on account of such overpayment in such case would defeat the purposes of this subchapter, or be against equity or good conscience . . . .

A regulation promulgated by the Secretary provides that fault on the part of SSA does not relieve the individual claimant from any fault on his own part, and it requires the Secretary to consider "all pertinent circumstances" including the individual's physical and mental condition, age, and comprehension in determining fault. 20 C.F.R. § 416.552 (1983).[1] The regulation provides that fault will be found when an incorrect payment "resulted from" one of the following:

(a) Failure to furnish information which the individual knew or should have known was material;

(b) An incorrect statement made by the individual which he knew or should

---

1. This regulation, applicable to SSI overpayments, is similar to 20 C.F.R. § 404.507 (1983), applicable to old-age, survivor's and disability insurance benefits overpayments. As both regulations interpret 42 U.S.C. § 1383(b)(1); the basic principles in overpayment cases are the same regardless of the type of benefit allegedly overpaid, and authorities interpreting the regulations relating to insurance benefits are pertinent to SSI cases as well.

have known was incorrect (this includes the individual's furnishing his opinion or conclusion when he was asked for facts), or

(c) The individual did not return a payment which he knew or could have been expected to know was incorrect.

*Id.* Under 20 C.F.R. § 416.708 (1983), Howard, as an SSI recipient, was obligated to report any change in her income, resources, or eligibility for non-SSI Social Security benefits.

■ The Secretary's conclusion that a claimant was not without fault is a factual determination that must be upheld if it is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g) (1976); *Valente v. Secretary of Health and Human Services*, 733 F.2d 1037, 1041 (2d Cir.1984); *Center v. Schweiker*, 704 F.2d 678, 679 n. 1 (2d Cir.1983). "Substantial evidence" means " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). We conclude that, with respect to most of the overpayments, substantial evidence supports the Secretary's finding that Howard was not without fault.

### A. *The Post-June 1979 Overpayments*

■ The record supports the ALJ's finding that Howard was not without fault in causing the overpayments insofar as they were received after Howard received $9,966 in widow's benefits. When Howard received the widow's benefits she was represented by counsel. Howard's testimony at the hearing acknowledged that her attorney had told her that in order to be eligible for SSI benefits she was not allowed to have more than $1,500 in the bank. Howard also stated that she had felt compelled to spend large portions of her widow's benefits quickly because she had too much money. Howard's actions in spending the extra money quickly and her testimony con-

stitute substantial evidence to support the ALJ's finding that she knew or should have known in and after June 1979 that she should have informed SSA, in the context of her receipt of SSI benefits, that she had received the large retroactive award of widow's benefits.

We are not persuaded to reach the opposite conclusion by the fact that Howard is elderly, illiterate, and easily confused—characteristics that were displayed at the hearing and that were considered by the ALJ. The fact that Howard was represented by counsel in June 1979 (the pertinent time), and her testimony as to counsel's advice and how she followed it, constitute substantial evidence to support the ALJ's finding that in June 1979, Howard was aware that receipt of the widow's benefits gave her too much money to continue her SSI eligibility.

■ Nor are we persuaded that counsel's letters to SSA in the summer of 1979 constituted adequate notice to SSA of Howard's new ineligibility for SSI benefits. The letters were confined to questioning the amount of the widow's benefits. They did not even mention that Howard was an SSI recipient. The ALJ found that these letters were not intended to alert those responsible for SSI payments as to the change in Howard's eligibility and that they could not have been effective as such an alert except by accident. The record amply supports these findings.

The authorities relied on by Howard are not to the contrary. Those decisions involved either full, deliberate, and timely disclosure by the overpaid individual, *see, e.g., Rini v. Harris*, 615 F.2d 625, 627 (5th Cir.1980), or action by the government inducing the individual not to report additional resources, *see Cucuzzella v. Weinberger*, 395 F.Supp. 1288, 1294 (D.Del.1975) (notice provided regularly by recipient until SSA indicated that repeated notice was no longer required). This is not a case in which the overpaid individual made a good faith effort to have her eligibility for SSI reconsidered, or in which the Secretary must be charged with notice that the indi-

vidual's eligibility for one program may be affected by benefits awarded under another.

Finally, we find unpersuasive Howard's contention that the ALJ improperly relied on a report prepared by an SSA employee of an interview with Howard in January 1980, which Howard refused to sign. The ALJ was not bound by the rules of evidence applicable to court proceedings, 42 U.S.C. § 405(b); *Richardson v. Perales, supra,* 402 U.S. at 400, 91 S.Ct. at 1426; *Diabo v. Secretary of Health, Education and Welfare,* 627 F.2d 278, 282 n. 2 (D.C. Cir.1980), and was entitled to receive the statement for whatever it was worth. While the document reflects a coherence probably not attributable to Howard, most of its substance is not inconsistent with other evidence that is not challenged. In any event, the ALJ considered the entire record, and our review of that record convinces us that even without the January 1980 statement, there was substantial evidence to support the finding that Howard was not without fault with respect to the post-June 1979 overpayments.

## B. *The Pre-June 1979 Overpayments*

 We see no similar basis for the finding that Howard was not without fault with respect to the overpayments received in April and May of 1979.[2] It is clear that under the statutory scheme then in effect, the April and May payments were overpayments since eligibility for SSI benefits was computed on a quarterly basis. 42 U.S.C. § 1382(c) (1976).[3] Howard's receipt of the widow's benefits in June 1979 thus made her ineligible for the entire second quarter of the year.

The matter of whether a payment was an overpayment, however, is different from the question of whether the recipient was at fault. Although Howard must be deemed to have been ineligible for SSI ben-

efits in April and May 1979, there is no evidence in the record to show that she was not without fault within the meaning of 20 C.F.R. § 416.552, *supra.* There is no evidence that she made any incorrect statement or failed to furnish any known information at that time, or that she was, or should have been, prescient enough in April or May 1979 to know that her 1958 application for widow's benefits would be granted in June 1979.

The Secretary's conclusion that Howard was not without fault in connection with the April and May 1979 overpayments is therefore unsupported by substantial evidence.

## C. *Remand*

 A recipient of SSI overpayments who is without fault must nevertheless make repayment unless the Secretary properly determines that recovery would defeat the purposes of the Act or be against equity or good conscience. 42 U.S.C. § 1383(b)(1); *Valente v. Secretary of Health and Human Services, supra,* 733 F.2d at 1046. Although the ALJ recited in the "Findings" and "Decision" sections of his opinion that recovery would not defeat the purposes of the Act and would not be against equity and good conscience, he had stated in the "Evaluation of the Evidence" section that, in light of his view that Howard was at fault, he need not reach the question of the equitability of recovery of the overpayments. Notwithstanding the boilerplate language in the "Findings" and "Decision" sections, the body of the opinion supports the conclusion that the ALJ gave no consideration whatever to such matters as Howard's ability to repay, *see* 20 C.F.R. § 416.553, or to the equitability of requiring her to repay, *see id.* § 416.554.

Accordingly, we remand the matter of the April and May 1979 (*see also* note 2, *supra*) overpayments to the Secretary for

---

**2.** The record does not reveal whether Howard's SSI check for June 1979 was received before or after she received the widow's benefits. If the June SSI payment was the earlier received, our discussion in the text of this section is equally applicable to the June payment.

**3.** This provision has since been amended by the Omnibus Budget Reconciliation Act of 1981, Pub. L. No. 97-35, § 2341(a), 95 Stat. 865 (1981) (codified at 42 U.S.C. § 1382(c) (Supp. V 1981)).

consideration of whether repayment would defeat the purposes of the Act or be against equity or good conscience.

## CONCLUSION

The judgment of the district court is affirmed insofar as it upheld the Secretary's decision with respect to SSI payments received by Howard following her receipt in June 1979 of any widow's benefits, and is vacated with respect to SSI payments received prior to that receipt of the widow's benefits. The matter is remanded to the Secretary for further proceedings not inconsistent with this opinion.