**Granville HINTON, Plaintiff,**

**v.**

**Louis SULLIVAN, Secretary of Health and Human Services, Defendant.**

No. 84 Civ. 9276(CES).

United States District Court,
S.D. New York.

March 28, 1990.

Cardozo Bet Tzedek Legal Services by Toby Golick, New York City, for plaintiff.

U.S. Atty. by Sapna Raj, Asst. U.S. Atty., New York City, for defendant.

## MEMORANDUM DECISION

STEWART, District Judge:

At the outset we express our great hope that this decision will help to resolve a long and often troubling course of events. This action has been particularly frustrating because the parties had reached the brink of what all considered to be an fair settlement over a year ago only to see it subsequently unravel. A recitation of the background to this action will amply illustrate the convoluted twists and turns this case has taken and the almost unfathomable bureaucracy of the Social Security Administration (the "SSA") which has in great part complicated the resolution of this matter.

## FACTUAL BACKGROUND

Plaintiff, Granville Hinton, originally filed this action *pro se* on December 26, 1984 seeking, *inter alia,* reinstatement of Supplemental Security Income ("SSI") benefits.[1] Mr. Hinton's difficulties began in 1980 when the SSA erroneously denied plaintiff's application for Social Security retirement insurance benefits in 1980. In 1981 this error was corrected and retroactive retirement benefits of $5626.50 were awarded to plaintiff along with monthly retirement benefits of $180.40. Since plaintiff was also a recipient of SSI this award of retirement benefits reduced his SSI benefits.[2] Thus, commencing in March of 1982 plaintiff began to receive monthly SSI benefits of $167.51.[3]

This would have been the end of it were it not for the fact that plaintiff's receipt of over $5000 in retroactive retirement benefits also had an effect on his eligibility for SSI benefits. SSI recipients must have limited resources to be eligible for SSI benefits.[4] In 1982 the resource limit was $1500. Accordingly, despite plaintiff's assertion

that he had spent $4500 of his retroactive retirement benefits repaying loans, the SSA terminated his SSI benefits in July of 1982 for being over the resource limit. It also concluded that plaintiff had been overpaid $1646.66 in SSI benefits, and that no SSI benefits were due to plaintiff for the preceding three months. Plaintiff requested a reconsideration of these actions since he contended that the retroactive benefit funds had been used to pay creditors. His request for reconsideration was administratively denied.

In December of 1982 plaintiff requested an administrative hearing to appeal the termination and overpayment determinations before an administrative law judge. Unfortunately, the administrative law judge did not directly address these issues in her decision, deciding only a collateral issue. In May of 1983 the Appeals Council denied plaintiff's request for review. Plaintiff then filed in June of 1983 a new application for SSI benefits. This new application was apparently not acted upon.

The next step taken by plaintiff was the filing of the instant action in December of 1984. Defendant Secretary of Health and Human Services (the "Secretary") moved for remand in order to locate plaintiff's claims file. On August 16, 1985 we granted the Secretary's motion for remand (the "August Order" or "remand Order") and awarded plaintiff interim benefits during the pendency of the remand "in an amount equal to the amount that plaintiff had been receiving prior to defendant's termination of benefits in July 1982."

Again, this presumably would have been a relatively simple case were it not for the fact that in September of 1985 an SSA employee interviewed the plaintiff to dis-

---

1. Plaintiff, now in his eighties, is presently represented by counsel.

2. Supplemental Security Income benefits, 42 U.S.C. § 1381 *et seq.,* are monthly benefits paid to needy elderly or disabled individuals. They are distinct from Social Security retirement benefits.

3. Plaintiff contends that he was entitled to monthly SSI benefits of $180.51 pursuant to 20

C.F.R. § 416.1124(12) which excludes the first $20 of income in calculating the amount of a beneficiary's SSI benefits.

4. The Act and its regulations establish "resource" eligibility limits for SSI recipients. *See* 42 U.S.C. 1382(a). An SSI recipient is presently allowed $2000 as liquid resources to retain SSI eligibility. 20 C.F.R. § 416.1205.

cuss his "potential SSI eligibility." This employee directed the plaintiff to sign a standard form which erroneously stated that Hinton was receiving about $128/month in support from two individuals ("in-kind support"). Plaintiff apparently signed the form without reading it carefully. Almost immediately after signing the form, he returned to inform the SSA employee that he was not receiving support from the two individuals named on the form since the named parties were deceased.

Nevertheless, the defendant released a check of approximately $1800 representing retroactive SSI benefits from June 1983 until July 1985. Despite plaintiff's statements to the contrary this check calculated retroactive benefits on the assumption that plaintiff had "reported" receiving in-kind support from the two deceased individuals. Moreover, the SSA informed plaintiff that his SSI benefits also were reduced because of his receipt of unearned income of $250.00/month from June 1983 until July 1985. However, and incredibly, this $250/month was apparently a "phony" entry which had been entered into the computer by SSA employees to keep the computer from releasing any checks to the plaintiff for retroactive benefits. *See* Defendant's Memorandum of Law In Opposition To Plaintiff's Motion for an Order Directing the Payment of Additional Benefits and Penalties and Enjoining the Reduction or Termination of Benefits ("Deft's Brief in Opposition") at 5. Yet this "phony" amount was actually charged as income to plaintiff.

Plaintiff requested an administrative appeal of this determination. This appeal was apparently not acted upon. Therefore, since plaintiff believed the amount of the retroactive benefits to be wrong he returned the check to the SSA uncashed.

To add to the confusion, the information about the in-kind support from the two deceased individuals was not corrected in the computer. The result was that plaintiff also received greatly reduced SSI benefit checks for the winter months of 1985. When plaintiff also returned these benefit checks uncashed, he was placed on "nonpay" status and no longer received any checks whatsoever.[5]

Meanwhile pursuant to our remand Order a number of administrative hearings were held. On October 6, 1986, the Social Security Appeals Council issued a decision which held that the plaintiff was not over the resource limit, that there was no basis for termination of his benefits, and that there was no basis for the overpayment determination except for the month of April 1982. The Appeals Council waived this April overpayment.[6] In February of 1987 defendants notified this court of the Appeals Council determination.

Finally, in July of 1987 plaintiff was restored to SSI benefits. Presumably, pursuant to the Appeals Council decision which reinstated plaintiff's benefits from July 1982, several checks were also issued to plaintiff by SSA totaling approximately $6100. These checks were sent in varying amounts over a period of months without any explanation as to what they were for. Because plaintiff believed that these checks were for retroactive payments and since the amount did not represent the full retroactive amount he believed was due him, he moved to hold defendant in contempt of our August Order and for an accounting. This motion was not adjudicated since there was definite movement by the parties toward settlement after the contempt motion was filed.

In June of 1989, on the eve of final settlement approval, plaintiff was terminated·from SSI benefits again. In addition,

5. Plaintiff apparently and astutely believed that if he cashed any of these checks he would waive his right to protest the amount.

6. While these administrative proceedings were being processed plaintiff moved this court to vacate our remand Order. On October 20, 1986 we denied plaintiff's request but required defendant to establish that it had complied with our remand Order directing interim benefits. In response to our direction, defendant submitted papers alleging the "report" of in-kind support as the reason for the reduction of plaintiff's SSI benefits. Plaintiff again objected to the reduction based on alleged in-kind support from the two deceased individuals.

plaintiff apparently did not receive his regular Social Security check as well. Apparently defendant had suspended plaintiff's SSI benefits for his alleged failure to explain how he had disposed of over $4000 in his bank account—funds presumably left over from previous SSI retroactive payments. Plaintiff moved by order to show cause for an injunction against the reduction or termination of Social Security and SSI benefits. This court issued a temporary restraining order restraining defendant from terminating plaintiff's benefits. When defendant restored plaintiff's benefits, the motion for an injunction was withdrawn by plaintiff.[7] Unfortunately, the casualty of this difficulty was the settlement. The instant motion followed.

Plaintiff argues that the reductions in plaintiff's SSI benefits were in violation of our August Order and done without proper notice and opportunity to be heard or despite plaintiff's timely requests for waiver or appeal. Plaintiff now demands $4423.63 representing unpaid SSI retroactive benefits from July 1982 through July 1985 and $63.90 in computational errors in defendant's accounting filed with the court on September 14, 1988.[8] In addition, plaintiff asks for a penalty of $1000 for civil contempt of our remand Order and to compensate plaintiff for the delay in benefits. Finally, plaintiff requests that we issue an order enjoining future reduction or termination of plaintiff's SSI benefits.

Defendant counters that all retroactive benefits have been paid to plaintiff save $63.90 which it agrees was the result of a computational error in computing plaintiff's retroactive benefits. It contends that

plaintiff's SSI benefits from July 1982 until July 1985 were correctly reduced because he "reported" in-kind support for that period. Thus, no further retroactive benefits are owed plaintiff. Moreover, even if the determination to reduce plaintiff SSI benefits to reflect any "reported" in-kind support was wrong, defendant avers that plaintiff has not exhausted his administrative remedies with respect to this determination. Therefore, defendant asserts that absent an agency "final decision" regarding whether plaintiff received in-kind support from July 1982 through July 1985 this court may not rule on his entitlement to SSI benefits.[9]

Finally, the Secretary argues that the court is without jurisdiction to award injunctive relief of the type requested by plaintiff. Defendant asserts that to enjoin the Secretary from reducing or terminating plaintiff's benefits would enjoin the Secretary from doing what the Social Security Act (the "Act") requires the Secretary to do—i.e., determine eligibility for SSI benefits based on criteria articulated in the Act.

## DISCUSSION

Because of the confused circumstances of this case and the relatively unusual posture of it, we begin with a brief overview of the applicable law. The Act limits judicial review to those cases in which an individual was a party to a hearing before the Secretary on his or her claim, a "final decision" has been rendered by the Secretary on the claim, and a timely action is brought in an appropriate district court to review that decision. *See* 42 U.S.C. §§ 405(g) and (h).[10] Central to the grant of a district

7. In addition, plaintiff's papers and exhibits reveal a bewildering barrage of communications sent to him from the SSA spanning May through October of 1989. These notices and letters are often contradictory and are most definitely confusing. They relate to changes of benefit payments, termination of benefits, overpayments, and in some cases checks. Moreover, although plaintiff has appealed or asked for a waiver of various determinations contained within these notices, a number of them appear to be written by someone unaware that such actions have been taken.

8. Plaintiff withdrew his original claim for an additional $40 representing an alleged underpayment for May and June of 1982. Plaintiff's Reply Memorandum of Law at 4, n. 2.

9. Defendant also contends that we have no jurisdiction to decide whether plaintiff was over the resource limit from January 1988 until May 1989 and thus overpaid since there has been no administrative final decision.

10. 42 U.S.C. § 405(g) reads in relevant part: Any individual, after any final decision of the Secretary made after a hearing to which he

court's subject matter jurisdiction is the requirement that there be a "final decision" by the Secretary after a hearing. *See Mathews v. Eldridge*, 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1975).

Construing the "final decision" requirement the Supreme Court has held that there are two conditions which must be satisfied to obtain judicial review under § 405(g). The first condition is that administrative remedies be exhausted. The second condition is that a claim for benefits shall have been presented to the Secretary. *Id.* at 328, 96 S.Ct. at 899. Exhaustion of remedies is waivable by the Secretary or in circumstances "where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate." *Id.* at 330, 96 S.Ct. at 900. However, a claim for benefits must be made upon the Secretary and is "an essential and distinct precondition for § 405(g) jurisdiction." *Id.* at 328–29, 96 S.Ct. at 899–900. The presentation of a claim for benefits is nonwaivable. *Id.* at 328, 96 S.Ct. at 899.

■ We find particularly instructive Judge Newman's analysis of the presentment and exhaustion requirements as set forth in *City of New York v. Heckler*, 742 F.2d 729 (2d Cir.1984), *aff'd sub. nom., Bowen v. New York*, 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). *Heckler* was a class action challenge to a procedure used by the SSA to determine eligibility of claimants for disability benefits. The Secretary contended on appeal that certain of the class members had failed to satisfy the requirements of § 405(g) and that the district court had lacked jurisdiction over most of the members of the certified class.

Judge Newman, writing for the panel, stated that the presentment requirement is met when the claimant specifically presents

the claim that his or her benefits should not be terminated. *Heckler*, 742 F.2d at 736. In the instant matter, on October 4, 1985 plaintiff objected in writing to the reduction of his July 1982 through July 1985 SSI benefits and returned the reduced check uncashed to the SSA. We hold that he has met the non-waivable jurisdictional requirement of presentment.

■ The exhaustion of remedies requirement may in appropriate circumstances be waived by either the Secretary or the courts. *See Heckler*, 742 F.2d at 736. A court may waive exhaustion when circumstances exist which indicate exhaustion would be futile, when the legal claims are collateral to the demand for benefits, or when the harm suffered pending exhaustion would be irreparable. *Id.* The Second Circuit does not view one factor as critical but prefers a more general approach of balancing the competing considerations "to arrive at a just result under the circumstances presented." *Id.*

A. *July 1982–July 1985 Retroactive Payments*

■ We believe that the circumstances for waiver of the exhaustion requirement exist under the instant facts. First, "we discern no legitimate interest to be advanced by requiring plaintiff to travel through the administrative maze as a prerequisite to a judicial hearing." *Heckler*, 742 F.2d at 737. Plaintiff has repeatedly attempted since 1985 to trigger the administrative review process regarding his objections to the SSA's continued erroneous insistence that he "reported" in-kind support. These objections have not been acted upon. We find it both ironic and troubling that after over four years of ignoring plaintiff's repeated objections to the reductions for his "reported" in-kind support, the defendant now takes the position that he

was a party ... may obtain a review of such decision by civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow.... As part of his answer the Secretary shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court

shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision....

42 U.S.C. § 405(h) reads in relevant part: No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided.

must first exhaust his administrative remedies before he objects to this reduction. Clearly, previous attempts by plaintiff to trigger the administrative review process have been futile. We see no indication that the situation has changed.

Second, plaintiff is of advanced age and appears to this court to be somewhat frail. It is our view that the harm to be suffered by waiting for his claims to wend their way through the administrative process, particularly given the dilatory and insensitive way the agency has responded to his claims thus far, would be irreparable.

Finally, while plaintiff's legal claims cannot be said to be "wholly" collateral to his claim for benefits, plaintiff's contentions that his due process rights were violated by the reduction and termination of his SSI benefits without notice or hearing and that defendant's actions were in contempt of our August Order are intertwined with his claim for benefits. Thus, we conclude that the "collaterality" factor also has been met under the instant circumstances.

After balancing the applicable factors, we conclude circumstances for waiver of the exhaustion requirement exist under the instant facts. Accordingly, we hold we have jurisdiction pursuant to § 405(g) over plaintiff's claims.

■ Having found we have jurisdiction we proceed to consider the Secretary's reduction of plaintiff's SSI benefits from July 1982 until July 1985 due to his "report" of in-kind support. Clearly, this reduction was made despite plaintiff's repeated statements that he did not receive any in-kind support—particularly since the two individuals who were purporting to support him were dead. Thus, defendant's continued insistence that plaintiff "reported" in-kind support in 1985 has been contradicted repeatedly by plaintiff for the last four years. Yet in spite of this, defendant continues to base its litigation posture on plaintiff's "report" of in-kind income. *See*

Deft's Brief in Opposition at 10. Moreover, this reduction of benefits was done in spite of plaintiff's timely objection and without any opportunity for plaintiff to be heard on appeal in contravention of the Secretary's own regulations. *See* C.F.R. § 416.1336(b) ("If appeal is filed within 10 days after the individual's receipt of the notice [to reduce benefits], the payment shall be continued or reinstated at the previously established payment level ... until a decision on such initial appeal is issued, unless the individual specifically waives in writing his right to continuation of payment at the previously established level...."). Accordingly, we find the Secretary's action of reducing plaintiff's SSI benefits from July 1982 until July 1985 was done without any substantial evidence that such an action was justified or appropriate, and done in violation to its own regulations.[11] *Cf. Goldberg v. Kelly,* 397 U.S. 254, 267–68, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287 (1970) (due process requires that welfare recipients have timely and adequate notice detailing reasons for benefit termination and an effective opportunity to defend by confronting adverse witnesses and by presenting his/her own arguments and evidence orally).

Therefore, since the only reason given for the reductions is plainly incorrect, defendant is directed to pay plaintiff forthwith the sum of $4459.73 representing the amount plaintiff's SSI benefits were reduced from July 1982 until July 1985.[12] Additionally, defendant is ordered to pay plaintiff forthwith the sum of $63.90 which it concedes plaintiff is owed. Deft's Brief In Opposition at 12.

### B. *January 1988–May 1989 Overpayments*

We turn next to plaintiff's request for injunctive relief. Specifically, plaintiff asks that we rule the following:

---

11. Indeed, as plaintiff's request for a hearing was not acted upon, the record is barren as to any findings on the part of defendant regarding any alleged in-kind support.

12. Defendant does not contest the $4,459.73 figure. It only argues that plaintiff has not exhausted his administrative remedies with respect to his entitlement to any further retroactive benefits. Deft's Brief in Opposition at 13.

1. that if plaintiff has retained any payment of retroactive benefits arising out of this litigation for longer than the period permitted under the Act and regulations, that any overpayment arising out of these payments be deemed waived; and,

2. that any retroactive payments arising from the instant motion not be used as a ground for a future reduction in benefits.

A brief summary of recent communications by the SSA to plaintiff are necessary to properly convey the background to these requests. Recently, by notice dated June 13, 1989 the SSA informed plaintiff that he was not eligible for SSI benefits from January 1988 through May 1989 because he was over the resource limit, presumably the result of his receipt of retroactive benefits paid as a result of his successful administrative appeal. The SSA claims plaintiff has been overpaid $3850.92.

Plaintiff requested an appeal of these determinations on June 20, 1989 and his counsel also subsequently requested review of the determination as well as a waiver. These requests have not been acted upon by the SSA. By notice dated July 12, 1989, the SSA notified plaintiff that no action was going to be taken on any SSI overpayments "for the period 3/88–5/88 until your pending litigation is resolved." However, only a week after this notice SSA informed plaintiff that $45.40 a month would be withheld from his checks until the overpayment was paid back. Plaintiff again requested an appeal. Again in August 1989 plaintiff was informed that $45.40 would be deducted from his monthly SSI benefit check, but in a letter dated October 2, 1989 plaintiff was notified his benefits were to be "reduced" to $240/month which is the amount of SSI benefits to which plaintiff believes he is entitled.

Incredibly, after trying to sort out the confusing array of notices, it appears that we have come full circle. More accurately, events seem to be compounding. Plaintiff originally brought this action six years ago to protest the termination of his SSI benefits and the SSA's determination that he had been overpaid due to the receipt of retroactive benefits. Now, due to his receipt of retroactive benefits caused by the original erroneous determination which precipitated the action, plaintiff is again protesting a reduction of benefits and the determination that he has been previously overpaid. Moreover, his requests for an appeal of this determination have been ignored.

■ In light of this seemingly endless cycle it is our view that a quick and equitable resolution of this dispute would be most welcome by the parties. Accordingly, we again consider whether we have jurisdiction pursuant to § 405(g) to consider these requests. It is our view that by his appeals and his counsel's letter, plaintiff has satisfied the non-waivable presentment requirement as to the "overpayment" issue.

■ As to the exhaustion requirement, had defendant remained consistent with its stated intention on July 12, 1989 not to take any action as to a possible overpayment until the conclusion of this litigation, we would have declined to find that the exhaustion of remedies requirement had been waived. Indeed, there was an express indication that no decision would be made regarding overpayments. However, only a week later in spite of its stated intention not to act, defendant reduced plaintiff's benefits because of alleged overpayments without any hearing and in spite of plaintiff's request for a hearing.

Therefore, in view of the fact that the defendant seems incapable of dealing consistently with Mr. Hinton, since it has had a history of not responding to his objections or appeals, and since under these extraordinary and egregious circumstances "deference to the agency's judgment is inappropriate," we hold that the exhaustion requirement has been waived.

■ We need not discuss in much detail whether or not plaintiff was overpaid during the period in question since the circumstances plainly suggest that even assuming plaintiff was overpaid, waiver of overpayment would be appropriate. Overpayments of SSI benefits are governed by

42 U.S.C. § 1383(b)(1) which states in relevant part:

> The Secretary shall make such provision as he finds appropriate in the case of payment of more than the correct amount of benefits with respect to an individual with a view to avoiding penalizing such individual ... who was without fault in connection with the overpayment, if adjustment or recovery on account of such overpayment in such case would defeat the purposes of this subchapter, or be against equity or good conscience....

In determining whether an individual is "without fault" in connection with an overpayment, fault on the part of the SSA does not relieve the individual claimant from his or her own fault. *See Howard v. Secretary of the Department of Health and Human Services*, 741 F.2d 4, 7 (2d Cir. 1984). The regulations require the Secretary to consider the individual's physical and mental condition, age, and comprehension in determining an individual's fault. 20 C.F.R. § 416.552; *see also Howard*, 741 F.2d at 7. Further, fault will be found when an incorrect payment results from:

1. failure to furnish information which the individual knew or should have known was material;

2. an incorrect statement made by the individual which he knew or should have known was incorrect; or

3. the individual did not return a payment which he knew or could have been expected to know was incorrect.

Finally, even if a recipient of SSI overpayments is found to be "without fault" repayment must still be made unless recovery would defeat the purposes of the Act or be against equity or good conscience. *Howard*, 741 F.2d at 9.

The only arguable basis of fault on the part of plaintiff is that he knew or could have been expected to know that he was receiving overpayments. However, throughout the course of this litigation, there has been constant confusion as to the correct amount of plaintiff's benefits. Indeed, even the retroactive SSI benefits which form the basis for defendants' position that plaintiff has been overpaid were sent to plaintiff without explanation and are themselves the source of controversy. To add to the general confusion, plaintiff alleges that he has been the recent victim of fires and robberies at his place of residence, from which he also apparently is in the process of being evicted by the City of New York.[13] Finally, although plaintiff is an intelligent and capable person, he is of very advanced age, in apparently frail physical condition, and can be quite obstinate about his viewpoints. As such, in light of the confusion surrounding his case, we are of the view that it is quite likely Mr. Hinton did not fully comprehend the consequences of his receipt of what appeared to him to be erroneously insufficient retroactive payments.

In sum, taking all circumstances into consideration, we do not think plaintiff knew or could have been expected to know he was receiving overpayments. Therefore, we find that he was "without fault." Moreover, it is clear given the circumstances that to require repayment would be against equity and good conscience. Accordingly, we reverse the determination of the Secretary and find that any overpayments made to plaintiff during the course of this litigation are waived.

### C. *Retroactive Payments and Future Benefits*

We turn next to plaintiff's request that we rule that plaintiff's receipt of retroactive benefits as a result of this motion not be used to reduce future benefits. We decline to do so. The Act and its regulations require that retroactive benefits are to be counted as resources six months after receipt. *See* 42 U.S.C. § 1382b(a)(7). While we have attempted under the unusual circumstances of this case to unravel past inequities regarding the denial of plaintiff's retroactive benefits, we have

---

**13.** This information was also communicated to the SSA by plaintiff when he appealed the overpayment determination of June 13, 1989.

done so within the limits of our statutory authority as articulated by the higher courts. It is our view that a ruling to exclude retroactive benefits from a future calculation of countable resources would be in direct contradiction to the dictates of the Act and its regulations and clearly beyond our authority. We therefore are constrained to deny that part of plaintiff's request.

### D. Contempt of the August Remand Order

█ Finally, we address whether defendant violated our remand Order and whether plaintiff should be compensated for the damages caused by the violation. Our remand Order explicitly stated that interim SSI benefits were to be continued "in an amount *equal to the amount* that plaintiff had been receiving prior to defendant's termination of benefits in July 1982." (emphasis added). This level of interim benefits was to be continued until the Secretary determined "that plaintiff is not entitled to SSI benefits and, in accordance with that determination, files an answer and a complete administrative record with this Court." Obviously, the amount of benefits plaintiff received for almost two years following that Order did not equal the amount plaintiff had been receiving prior to July 1982.

Defendant contends despite the explicit language of the remand Order that it understood the remand Order to mean that "appropriate and correct SSI benefits were to be reinstated to the plaintiff." Deft's Brief in Opposition at 12. As such, defendant contends it was justified in reducing plaintiff's benefits almost immediately after the remand Order. We find such a position disingenuous at best. First, if we had meant that defendant was to "recalculate" plaintiff's benefits we would have so stated. Moreover, and more significantly, the language of the remand Order reflected the fact that the defendant had terminated plaintiff's SSI benefits and thus it obviously had already taken the position that the level of plaintiff's "appropriate

and correct SSI benefits" at the time of the remand Order was zero. It was precisely this determination that was the subject of plaintiff's eventually successful administrative appeal. Thus, we directed that the interim benefit amount be arbitrarily returned to pre–July 1982 levels specifically because there was a dispute as to the amount, if any, to which plaintiff was entitled.

█ A district court has the power to hold a party in civil contempt upon clear and convincing proof of noncompliance with a court order. See N.A. Sales Co., Inc. v. Chapman Industries Corp., 736 F.2d 854, 857 (2d Cir.1984). Here, defendant was unambiguously directed by this court to pay plaintiff an amount *equal to* the amount paid to him pre-July 1982. There is no dispute by defendant that this was not done despite the remand Order's explicit language. We therefore conclude that defendant was in contempt of our August Order.

A sanction imposed on a party held in civil contempt generally may serve either or both of two purposes: to coerce future compliance with the court's order, or to compensate the complainant for losses resulting from the contemnor's past noncompliance. See Perfect Fit Industries, Inc. v. Acme Quilting Co., 673 F.2d 53, 56–57 (2d Cir.), cert. denied, 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 71 (1982). When the purpose is compensatory, the injured party should be reimbursed for his actual injury. Id. at 57.

It is difficult to accurately gauge the actual damage to plaintiff caused by years of litigation over this issue. He asks for $1000 to compensate him for the interest he may have lost and for the burdens the noncompliance placed upon him. We think this estimate of his damage in terms of mental and emotional stress alone is quite reasonable. We therefore award him $1000 to compensate him for his damages.[14] Cf. Nelson v. Steiner, 279 F.2d 944, 948 (7th Cir.1960) ("The executive branch of government has no right to treat

14. With this determination we dismiss plaintiff's pending motion for contempt as moot.

with impunity the valid orders of the judicial branch.").

## CONCLUSION

As we stated at the outset we hope that this decision will sort out the past confusion and enable the parties to start afresh. While we are not ordinarily given to philosophic statements, we are constrained to note briefly that the Social Security system which is supposed to help ease the plight of the disabled, elderly and indigent fell far short of adequately performing its function, at least with regard to plaintiff.

In this action we have seen a claimant's repeated requests for hearings and appeals go unheeded, "phony" computer entries of income subsequently charged to the claimant, repeated reductions of benefits based on a claimant's "reports" which the claimant repeatedly denies making, a violation of an unambiguous court order, and a host of confusing and incomprehensible SSA communications. These circumstances are particularly troubling since they occurred subsequent and collateral to our original August Order. Indeed, had that Order been heeded much of the resultant confusion would have been avoided. We trust that from this point the chaotic state of Mr. Hinton's benefit situation will be rationalized and clarified.

So that there will be no mistake as to what we hold today, we expressly articulate the following determinations:

1. Defendant Secretary of Health and Human Services is to pay plaintiff Granville Hinton the sum of $4459.73 representing retroactive SSI benefits from July 1982 through July 1985;

2. Defendant is to pay plaintiff the sum of $63.90 which it concedes it owes plaintiff;

3. Any amount of the retroactive benefits awarded by section A of this decision and retained by plaintiff will be calculated as resources in computing plaintiff's eligibility for future SSI benefits pursuant to applicable law and regulations;

4. Any overpayments made to plaintiff during the course of this litigation through the date of this decision are deemed waived;

5. Defendant is to pay plaintiff the sum of $1000 to compensate him for the damages plaintiff suffered as a result of defendant's noncompliance with our August Order.

SO ORDERED.