**Syno MATTHANASAK, in his own behalf and on Behalf of and as Representative Payee of his daughter Chantala Matthanasak, a minor, Plaintiff,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.**

**No. Civ–90–0816T.**

United States District Court,
W.D. New York.

June 21, 1991.

Advocacy for the Developmentally Disabled, Inc., Rochester, N.Y., Mario R. Silva, for plaintiff.

---

104

Bradley Tyler, Asst. U.S. Atty., Rochester, N.Y., for defendant.

## DECISION AND ORDER

TELESCA, Chief Judge.

Plaintiff Syno Matthanasak, both in his own behalf and on behalf of and as representative payee of his daughter Chantala Matthanasak, brought this action pursuant to 42 U.S.C. § 1383(c)(3). He seeks an order reversing the final determination of the Secretary of Health and Human Services which denied him a waiver of recovery for overpayment of $4,853.73 in Supplemental Security Income (SSI) benefits. For determination is the question whether the Administrative Law Judge's (ALJ's) decision holding that plaintiff was not without fault in causing the overpayment is supported by substantial evidence. For the reasons discussed below, I find that the Secretary's decision was justified and therefore grant the defendant's motion for judgment on the pleadings.

## BACKGROUND

Plaintiff Syno Matthanasak immigrated with his family from Laos in 1983 and, soon after his arrival, applied for SSI benefits for his blind and mentally disabled daughter, Chantala. Exhibit 1. At the time he submitted the application, Mr. Matthanasak did not understand English and was not aware of the qualifications for SSI. R. 36.

However, once his application was granted and SSI benefits' disbursement began, plaintiff had biannual meetings with Social Security Administration (SSA) workers and informational monthly meetings with Ms. Sharon VanDusen who worked with the family as case manager and social worker. R. 45. During the course of these meetings, Mr. Matthanasak's SSI reporting requirements were explained but his understanding was somewhat hindered by his inability to understand English. R. 42, 48.

Except for one instance,[1] the record reflects that plaintiff made accurate and timely reports to the SSA for two years after benefits were awarded as required by 20 C.F.R. § 416.708. For example, he reported a change of address (exhibit 19), the purchase of a car (R. 137), the maintenance of his employment and rent expenses (exhibit 18), cash on hand (R. 114, 122, 138), and the opening of two bank accounts—a joint account with his daughter ("R.S.B.," 0327128807) and a custodial account on behalf of his daughter (Rochester Community, 033–0037007)—and the interest earned from those accounts (Exhibits 17, 19, 20, 26).

Despite this period of accurate and timely reporting, plaintiff twice failed to meet his reporting obligations with respect to income estimates for late 1985 and early 1986. As a result, he received two Notices of Overpayment from the SSA totalling $869.76,[2] both of which plaintiff discarded as "unimportant." R. 45, 70. In addition, plaintiff also failed to report the fact that he opened a Marine Midland Bank account jointly with his wife in April of 1986. Exhibit 28. This omission occurred despite plaintiff's assertion at the time that he reported every resource and that he "didn't keep any information secret." Exhibit 10. The parents' joint bank account was eventually discovered in 1987 when the IRS informed the SSA that plaintiff had received interest income from the bank. R. 84.

In December of 1986, Mr. Matthanasak was fired from his job with the Regional Transit Service. He returned to the SSA office in January of 1987 to have his daughter's SSI benefits reinstated, stating that he would notify SSA should he receive unemployment insurance benefits in the future. Exhibit 23. Because the SSA deemed him not without fault for the earlier overpayments, plaintiff agreed to reim-

---

1. In October, 1984, Plaintiff failed to report his earnings at a redetermination meeting with SSA workers. Exhibit 17.

2. The second notice resulted from plaintiff's failure to report his wife's new job in addition to underestimating his income. Exhibits 3, 9

(Mrs. Matthanasak started working in April, 1986 and, while Ms. VanDusen called the SSA in April to clarify employment information, accurate information was not reported until May of that year).

burse the Administration for these amounts through a reduction in reinstated SSI benefits. R. 161. Listed on the 1987 reinstatement form was the balance in his joint account with his daughter in the amount of $1,608.19 (R. 165), but he failed to report his joint account with his wife which, by that time, totaled $6,817.92 representing deposits from plaintiff's wages. R. 33.

The record indicates that in April and May of 1986 and from December of 1986 through March of 1988, Matthanasaks' earnings and resources exceeded the $2,700 limit and therefore rendered them ineligible to receive SSI benefits on behalf of their daughter. *See* 20 C.F.R. § 416.1205(c); Exhibit 9. As a result, the SSA notified plaintiff that there was an overpayment of $5188.97.

Plaintiff thereafter sought waiver of repayment and requested and received a hearing on this issue before an Administrative Law Judge ("ALJ"). Plaintiff appeared with counsel and an interpreter and claimed that he was entitled to a waiver of the overpayment because he was "without fault" and because recovery of payments would "defeat the purpose of Title II of the Social Securities Act." See 20 C.F.R. § 416.553. Specifically, plaintiff argued that he did not and could not have understood his reporting responsibilities because of his inability to understand English and because no one adequately had explained the notices and forms to him. R. 36, 37. Plaintiff's social worker, Ms. VanDusen, testified in support of his assertions.

> Counsel: Were there any specific situations where you were aware that Mr. Matthanasak didn't understand what you were telling him [about SSI reporting requirements]?
>
> Ms. VanDusen: Yeah. I mean, that happens a lot, I think. Just from my continual contact with him there are times when I assess that he is not understanding what I'm explaining to

him, and I may need to be able to show him in some way. R. 48.

Additionally, plaintiff asserted that he should be excused for overpayments arising from his and his wife's unreported joint account because it was only after the SSA learned of the account from the IRS that plaintiff realized his obligation to report it. R. 44. As Ms. VanDusen testified, plaintiff "... thought they'd only want to know about his daughter's account" since that was the only one about which the SSA inquired. R. 44. In a decision dated December 27, 1989, the ALJ denied plaintiff's request for a waiver of overpayment. After adjusting the amount of overpayment to $4853.73,[3] the ALJ stated that "the impression from the record is that, with the assistance of Ms. VanDusen, [the parents] realized that notices regarding supplemental security income required translation so that they would stay abreast of pertinent developments." R. 16. After referring to the plaintiff's sporadic reports to the SSA, the ALJ supported this "impression" by stating:

> Representative payees, by accepting this responsibility, are obliged to make proper reports of events affecting payment amounts for [SSI] recipient's [sic]. Although ... the representative payee (the recipient's father) in this had little understanding of the system, or even the English language, when his daughter first became entitled to [SSI], the same rationale cannot be used to perpetually excuse improper reporting of events affecting eligibility. The claimant had been overpaid on two other occasions for similar reasons. R. 16.

The Appeals Council adopted the ALJ's decision on June 12, 1990, concluding that recovery of the $4853.73 in overpayments should not be waived. Plaintiff thereafter filed this action for judicial review and, along with the defendant, now moves for a judgment on the pleadings.

---

**3.** Exhibit 6 reveals that the Administration had shown Mrs. Matthanasak's earnings as $711.50 for April, 1986, instead of $71.50.

## DISCUSSION

Under § 1631(b)(1) of the Social Security Act, 42 U.S.C. § 405(g), the Secretary's findings as to any fact shall be conclusive if supported by substantial evidence. This test is satisfied when evidence in the record contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)); see also *Howard v. Secretary of the Dep't of Health and Human Service*, 741 F.2d 4, 8 (2nd Cir.1984).

■ Under § 1631(b) of the Act, the Secretary may require a person who has received an overpayment of benefits to refund the excess amount. The recovery by the Secretary will be waived if the recipient demonstrates that (1) he is without fault in causing the overpayments; and (2) adjustment or recovery on account of such overpayment would defeat the purposes of the Act or be against equity or good conscience. 42 U.S.C. § 1383(b)(1); see also 20 C.F.R. § 416.553. Where a claimant satisfies both of these criteria, the Secretary is deemed to have waived his right to recovery. *Valente v. Secretary of Health and Human Services*, 733 F.2d 1037, 1042 (2d Cir.1984); *Center v. Schweiker*, 704 F.2d 678, 680 (2d Cir.1983).

■ An overpaid recipient will be deemed "at fault" where the overpayment resulted from (1) the recipient's failure to provide information which he knew or should have known was material; (2) an incorrect statement which he knew or should have known was incorrect; or (3) payment which he knew or should have known was incorrect. 20 C.F.R. § 416.552. The plaintiff must therefore demonstrate more than a mere absence of bad faith, and even an honest mistake may be sufficient to constitute fault. *See Center v. Schweiker*, 704 F.2d at 680.

■ The subjectivity of the criteria used to determine the degree of the plaintiff's culpability requires the ALJ to consider "all the pertinent circumstances surrounding the overpayment in a particular case." 20 C.F.R. § 416.552. These circumstances include "the individual's understanding of the reporting requirements" as well as "his efforts[, ability,] ... and opportunities to comply with [those] requirements." *Id.* In this regard, the fact that a recipient neither speaks nor understands English is not determinative. *Soberal–Perez v. Heckler*, 717 F.2d 36 (2d Cir.1983), *cert. denied*, 466 U.S. 929, 104 S.Ct. 1713, 80 L.Ed.2d 186 (1984). Rather, the operative inquiry is whether the recipient had "[n]otice of [sufficient] facts ... [to] incite a person of reasonable prudence to inquire under similar circumstances." *Id.* at 43 (quoting *Essex National Bank v. Hurley*, 16 F.2d 427, 428 (1st Cir.1926)).

After carefully reviewing the evidence before me, I find that substantial evidence supports the ALJ's finding that plaintiff was not without fault in causing the overpayment. The record is replete with numerous instances in which plaintiff was placed on notice regarding his obligation to have SSA forms and communications translated and explained for his understanding. *See Soberal–Perez*, 717 F.2d at 43 (individuals "who were under no impairment to understand English ... [have] duty of further inquiry").

For example, at some time before his first erroneous report, plaintiff knew that he needed help in understanding SSA forms and notices in order to meet SSI reporting requirements. Indeed plaintiff testified that in preparation for a December, 1985 SSA meeting at which estimates of his income and resources were made, he brought "everything that social worker send [sic] to [me], and *[I] bring [sic] the letter to the people who know how to read English and how to prepare check stub and everything, every statement. Then [I] brought a whole ... package and give it to the worker, and they took everything.*" R. 42, 150 (emphasis added). Ms. VanDusen also testified that she had warned plaintiff "that he needs to show me all the things he gets from Social Security...." R. 52.

Not only did plaintiff know he needed help in understanding the reporting requirements, he also knew or should have known that he was required to report his and his wife's income and any fluctuations. The record indicates that he reported both the amount he and his wife made as well as any changes in their employment. R. 139, 150, 157, 167. Ms. VanDusen, in fact, testified that she had "describe[d] to [the Matthanasaks] that they needed to call [the SSA] with any income changes...." R. 51. She elaborated by testifying further that:

> [I]f I happen to come to a home visit and [Mr. Matthanasak] has gotten something in the mail he will show it to me. Sometimes ... I ask him where the other notices are because obviously there's a piece missing, and he says, "Well, I threw it out," or you know, "I don't know where it is," and *I try to reinforce by saying that he needs to show me all the things he gets from Social Security, which doesn't happen.* R. 52.

Thus, it is clear that Mr. Matthanasak was aware of his obligation to inform himself of his reporting requirements and to pursue such inquiry until he knew what information was material to SSI eligibility.

In addition to having received and understood notice as to income reporting requirements, substantial evidence also exists in the record to support the ALJ's conclusion that Mr. Matthanasak should have known to report any and all resources, including the parents' joint account. For example, on December 20, 1984, Mr. Matthanasak reported the joint savings account he opened with his daughter and remarked that he planned to also open an account for himself. Exhibit 17. Additionally, plaintiff reported the distinction between his own resources and those designated for his daughter's care. R. 147. Considering these disclosures, plaintiff should have known to report or at least inquire into his reporting obligations regarding all income and resources, no matter how these monies were denominated or in which account they were placed.

In sum, plaintiff knew or should have known the materiality of the information he failed to provide. Not only did he realize his need to have information translated and his need to inquire further for his own understanding, but Mr. Matthanasak also had ample opportunity to do so at any of the biannual meetings with SSA workers or the monthly meetings with Ms. VanDusen. He cannot be excused from fault merely because he failed to diligently seek assistance in understanding his responsibilities. It is evident that he knew translation was required to understand SSI reporting requirements and he therefore should have known of those requirements. I agree with the ALJ that plaintiff has failed to demonstrate that he was "without fault" for the overpayments in question. In light of this holding, I need not consider plaintiff's assertion that recovery of the overpayments would defeat the purpose of the Act. That determination is only required when the recipient is found to be without fault. *Chlieb v. Heckler,* 777 F.2d 842, 846 (2nd Cir.1985); *Viehman v. Schweiker,* 679 F.2d 223, 227 (11th Cir.1982).

## CONCLUSION

Substantial evidence supports the conclusion that Plaintiff knew or should have known that the changes in his and his wife's income and resources which he failed to provide were material and would affect Chantala's SSI eligibility. The defendant's cross-motion for judgment on the pleadings is therefore granted and the plaintiff's motion for judgment on the pleadings is denied.

ALL OF THE ABOVE IS SO ORDERED.