ALEXANDER COUNTY HOSPITAL,
et al., Plaintiffs,

v.

Otis R. BOWEN, Secretary of Health
and Human Services, Defendant.

No. C–C–86–501–P.

United States District Court,
W.D. North Carolina,
Charlotte Division.

Aug. 24, 1988.

Leonard C. Homer, Ober, Kaler, Grimes & Shriver, Baltimore, Md., Julia V. Jones, Moore & Van Allen, Charlotte, N.C., for plaintiffs.

Charles E. Lyons, Asst. U.S. Atty., Charlotte, N.C., Gerard Keating, Office of the General Counsel, Dept. of Health and Human Services, Washington, D.C., for defendant.

## MEMORANDUM OF DECISION

ROBERT D. POTTER, Chief Judge.

THIS MATTER is before the Court on cross motions for Summary Judgment by Plaintiffs and Defendant. Arguments on the motions were heard by the Court at Charlotte, North Carolina on July 20, 1988. Carel Hedlund, Esq. appeared for Plaintiffs and Gerard Keating, Esq. appeared for Defendant. For the reasons stated herein, the Court will grant Plaintiffs' motion for summary judgment and deny Defendant's cross-motion for summary judgment.

### I. BACKGROUND

#### A. *Parties*

Plaintiffs are 54 licensed acute general hospitals which are certified Medicare "providers," which are appealing as a group from a decision by the Provider Reimbursement Review Board's (PRRB) dismissal of Plaintiffs' requests for hearings on their respective cost reports. Defendant is the Secretary responsible for the administration of the Department of Health and Human Services (HHS) including the Medicare Program. The Health Care Financing Administration (HCFA) is the operating component of HHS charged with administration of the Medicare Program.

#### B. *Health Insurance for Aged and Disabled*

Congress enacted the Medicare Program in 1965 to subsidize medical care of the elderly. Under the Act, providers of covered services, such as hospitals, are reimbursed for "the lesser of (A) the reasonable cost of such services, as determined under [42 U.S.C.] section 1395x(v) ..., or (B) the customary charges with respect to such services." 42 U.S.C. § 1395f(b)(1) (1982).

The Secretary of HHS issues regulations by which "reasonable costs" will be calculated. 42 U.S.C. § 1395x(v)(1)(A) (1982). Then, a fiscal intermediary determines the amount of reimbursement due and furnishes the provider a written notice for each cost period. 42 U.S.C. §§ 1395h, 1395g (1982); 42 C.F.R. § 405.1803 (1986).

Up until 1979 all insurance costs, including fire, casualty, accident, and malpractice insurance premiums or contributions to self-insurance funds were included in general and administrative costs and were reimbursed to the hospital on the basis of percentage of medicare utilization of the hospital's services by the medicare beneficiaries.

In 1979, the Secretary issued regulations which required that malpractice insurance costs be removed from the general and administrative pool of costs and be directly apportioned between Medicare and non-Medicare patients based on the dollar ratio of paid losses. The 1979 regulation has been invalidated by several circuits and district courts, as well as by the Fourth Circuit. *Bedford County Memorial Hospital v. Health & Hum. Services,* 769 F.2d 1017 (4th Cir.1985).

Having been unsuccessful in sustaining his 1979 Rule, the Secretary proceeded to publish another rule on April 1, 1986 as a final rule with a post-publication comment period. The Secretary stated that the new rule was retroactively "applicable to case reporting periods, beginning on or after July 1, 1979." 51 Fed.Reg. 11194 (1986), 42 C.F.R. § 413.56 (1986).

Under the 1986 Rule, a provider's malpractice insurance premium costs are divided into two components. The "administrative component," which accounts for 8.5% of total premium cost, is included in the provider's general administrative costs, and is apportioned on the basis of the provider's Medicare utilization rate. *See* 52 Fed.Reg. 9835 (1987). The "risk component," which comprises the remaining 91.5% of total premium cost, is apportioned on the basis of a formula that takes into account the individual provider's Medicare utilization rate as well as the national Medicare malpractice loss ratio and the national Medicare utilization rate.

Before determining whether the 1986 Rule is valid under the Medicare statute, the Court should determine whether the Secretary has the authority to apply the 1986 Rule retroactively. If he does not have authority to apply the rule retroac-

tively, then the Court need not decide whether the Rule is valid since its validity would be irrelevant to the Court's decision in this case. Plaintiffs here seek reimbursement only for cost years prior to 1986. Of course, the Secretary argues that the Medicare Act, at 42 U.S.C. §§ 1395x(v)(1)(A)(ii) and 1395hh specifically sanctions retroactive rulemaking. We will see if he is correct.

## II. ANALYSIS

■ Title 42, section 1395x(v)(1)(A) provides in pertinent part:

> The reasonable cost of any services ... shall be determined in accordance with regulations....
>
> .    .    .    .    .
>
> Such regulations shall
> (i) take into account both direct and indirect costs of providers of services ..., and
> (ii) provide for the making of suitable retroactive corrective adjustments where, for a provider of services for any fiscal period, the aggregate reimbursement produced by the methods of determining costs proves to be either inadequate or excessive.

42 U.S.C. § 1395x(v)(1)(A) (1982).

Notice that the language of the statute is to the effect that the regulations prescribed by the Secretary shall "provide for the making of suitable retroactive *adjustments*" (emphasis added). The statute does not bestow on the Secretary any authority to provide for any suitable retroactive *regulations*. Yet, the Secretary, on page 19 of his Memorandum in support of his cross-motion for summary judgment, states

> Given the corrective nature of the 1986 *rule* and the new *rulemaking* record, plaintiff cannot show the 1986 *rule* is arbitrary and capricious. (Citing cases) While the providers can be expected to assert that the 1986 *regulation* is invalid....

(Emphasis added).

The Secretary, on June 1, 1979, promulgated "the 1979 malpractice *rule.*" *See* 44 Fed.Reg. 31,641 (1979), adding 42 C.F.R. §§ 405.452(b)(1)(ii), *re-designated* as 42 C.F.R. § 405–452(a)(1)(ii) (48 Fed.Reg. 39,-811 (1983)). When the 1979 *rule* became enmeshed in litigation, and was ultimately found to be invalid by several circuits, the Secretary promulgated the 1986 *rule,* which effective May 1, 1986 eliminated the 1979 malpractice rule and added 42 C.F.R. § 413.56 (1986) (the 1986 rule) to the Medicare regulations. See 51 Fed.Reg. 11,195–96, *adding* 42 C.F.R. § 405.457, *redesignated as* 42 C.F.R. § 413.56 (51 Fed.Reg. 34,-790, 34,808–09 (Sept. 30, 1986)).

Title 5, Subchapter II, "Administrative Procedure," defines "rulemaking" as an "agency process for formulating, amending, or repealing a rule." 5 U.S.C. § 551(5) (1982). Subparagraph (4) of section 551 provides:

> "rule" means the whole or a part of an agency statement of general or particular applicability and *future* effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency and includes the approval or prescription for the *future* of rates, wages, corporate or financial structures or reorganizations thereof, prices, facilities, appliances, services or allowances therefor or of valuations, costs, or accounting, or practices bearing on any of the foregoing;

5 U.S.C. § 551(4) (1982) (emphasis added).

Clearly the 1986 rule was not an "adjustment," but is a new rule which the Secretary has promulgated and is attempting to make retroactive in clear violation of his statutory authority under the Medicare Act and the Administrative Procedure Act (APA).

Title 42, section 1395x(v)(1)(A) provides that the regulations prescribed by the Secretary "... may provide for the establishment of limits on the direct or indirect overall incurred costs or incurred costs of specific items or services or groups of items or services to be recognized as reasonable based on estimates of the costs necessary in the efficient delivery of needed health services to individuals covered by

the insurance programs established under this subchapter...." *See* Social Security Amendments of 1972, Pub.L. No. 92–603, § 223(b), 86 Stat. 1329, 1393 (1972).

In amending the statute, both houses of Congress made clear their intent that this new authority was to be exercised on a prospective basis only: " '[The authority] to set limits on costs ... would be exercised on a prospective, rather than retrospective, basis so that the provider would know in advance the limits to Government recognition of incurred costs and have the opportunity to act to avoid having costs that are not reimbursable.' " *Georgetown University Hosp. v. Bowen*, 821 F.2d 750, 755 (D.C.Cir.1987), *quoting* S.Rep. No. 1230, 92d Cong., 2d Sess. 188, 188 (1972).

Thus, under both the APA and the Medicare Act, the Secretary's authority for rulemaking is prospective, not retrospective. To hold otherwise would give the Secretary unfettered discretion in enacting regulations that give retroactive effect to any or every change that is made in formulas for determining reimbursable costs. *Mason Gen. Hosp. v. Secretary of Dept. of H.H.S.*, 809 F.2d 1220, 1225 (6th Cir.1987).

In summary, both the 1979 Rule, which has been invalidated, and the 1986 Rule in effect legislate an entirely different method of reimbursement to providers for malpractice insurance premiums, and the Secretary attempts to apply the 1986 Rule retroactively. This he is not authorized to do. Therefore, at least until 1986, there is no valid rule in existence which replaces the pre–1979 Rule The Secretary contends that, if neither the 1979 Rule nor the 1986 Rule can be applied in this case, there is a "gap" in the regulations applicable to reimbursement for cost years 1980 to 1986. There is no gap. The pre–1979 Rule never was validly replaced; it may be applied to determine the amount of reimbursement owed.

Since Plaintiffs are the prevailing parties they are entitled to interest, to be determined in accordance with the provisions of Title 42, section 1395*oo* (f)(2), on the amounts Plaintiffs are reimbursed in accordance with the pre–1979 Rule.

### III. JURISDICTIONAL ARGUMENTS

■ Defendant contends that in the event the Court rules that retroactive application of the 1986 Rule is invalid, the Court should remand the case to the PRRB for a determination, with respect to each hospital and cost year involved in this case, of whether the hospital satisfied the statutory requirements for PRRB jurisdiction, and thus federal court jurisdiction, over the cost year or years at issue.

Plaintiffs contend that Plaintiff hospitals filed their first appeal regarding malpractice cost reimbursement with the PRRB on March 27, 1982. These appeals contested the Notice of Program Reimbursement ("NPR") issued under the 1979 Rule. Plaintiffs waited for four years while the appeals were pending before the Board. Then on September 3 and 4, 1986, the PRRB issued orders refusing to hear Plaintiffs' appeals, contending that it did not have jurisdiction since Plaintiffs' fiscal intermediaries had not issued revised NPR's reflecting calculations under the *1986* Rule for the cost years at issue, as required by HCFAR 86–2.

Each of Plaintiff hospitals had been issued an NPR figured according to the 1979 Rule. They claimed then, and claim now, that their malpractice premium costs should have been calculated as provided by the pre–1979 (and pre–1986) Rule promulgated by the Secretary. Since the 1979 Rule has been invalidated by the Fourth Circuit, and this Court has held that the Secretary has no authority to apply the 1986 Rule retroactively, the Secretary has no basis for claiming that Plaintiffs must obtain a "revised NPR" based on the 1986 Rule. It would be a senseless exercise in bureaucratic posturing to require all 54 hospitals to await the issuance of yet another NPR, which they undoubtedly (and with good reason) will contest.

■ First, for over four years the PRRB did not hear Plaintiffs' appeal, and then, basing its refusal to act on an arbitrary and capricious rule by HCFA (HCFAR 86–2), rejected Plaintiffs' claims because Plain-

tiffs have not filed a "revised NPR." Defendant insisted that Plaintiffs obtain revised NPR's and file their claims again. Defendant apparently expected Plaintiffs to then wait however long it takes for the bureaucracy to move for a ruling from the PRRB, and possibly another appeal to the courts from an adverse ruling. Such conduct should not be tolerated and will not be tolerated by this Court. Plaintiffs have waited long enough for the bureaucracy to move, and it once again has failed to perform. Having failed to act on perfectly valid appeals within a reasonable time by any standards, the Court finds that Defendant has waived any final decision requirement by the PRRB for jurisdictional purposes and will not require Plaintiffs to continue the exercise in futility to collect the reimbursement due to them for the malpractice premiums for which they are due reimbursement under the pre–1979 Rule. This Court therefore finds that it has jurisdiction of this case. *Johnson v. Heckler,* 769 F.2d 1202 (7th Cir.1985).

It has been over six years since Plaintiffs first filed their claims with the PRRB. The 1979 Rule has been invalidated by the courts, and the 1986 Rule clearly cannot be applied retroactively.

For similar reasons, this Court will not remand the matter to the PRRB as requested by Defendant for the purpose of determining whether each individual hospital satisfied the statutory requirements for PRRB jurisdiction (specifically, timely appeal) and thus federal Court jurisdiction for the past years at issue.

NOW, THEREFORE, IT IS ORDERED that this cause of action is REMANDED to the Secretary for reimbursement to Plaintiffs within 120 days for all cost years claimed in the Complaint in accordance with the pre–1979 Rule, less any amounts Plaintiffs have received for such cost years, plus interest as provided for in 42 U.S.C. § 1395*oo* (f)(2). A judgment will be filed simultaneously with this Memorandum of Decision granting Plaintiffs' motion for Summary Judgment and denying Defendant's cross-motion for Summary Judgment.