## CARDIAC MONITORING SERVICES, INC., Plaintiff,

v.

## BLUE CROSS AND BLUE SHIELD OF ARKANSAS and Dr. Louis Sullivan, Secretary of the Department of Health and Human Services, Defendants.

### No. LR–C–92–01.

United States District Court, E.D. Arkansas, W.D.

Aug. 6, 1992.

Curtis L. Bowman, Jack, Lyon & Jones, P.A., Deborah Ruth Sallings, Jack, Lyon & Jones, P.A., Little Rock, AR, for Cardiac Monitoring Services, Inc.

Jim D. Patton, Blue Cross/Blue Shield, Little Rock, AR, for Blue Cross.

Linda B. Lipe, U.S. Attorney's Office, Little Rock, AR, Stuart Langbein, Health Care Financing Div., U.S. Dept. of Health & Human Services, Baltimore, MD, for Louis Sullivan.

## ORDER

HENRY WOODS, District Judge.

INTRODUCTION. The Secretary of the Department of Health and Human Services ("Secretary") has filed a motion to dismiss for lack of subject matter jurisdiction. He alleges that plaintiff, Cardiac Monitoring Services, Inc., has failed to assert a proper basis for federal jurisdiction. The Court agrees, and the motion is granted.

THE MEDICARE ACT. The Medicare Act ("Act") provides for the payment of covered medical expenses incurred by eligible aged and disabled individuals. Part B of the Act pays supplementary medical insurance and authorizes payment for various medical and health services and supplies. 42 U.S.C. § 1395k. One such service is the telephonic analysis of single chamber pacemakers.[1]

The payment for a service like the telephonic analysis of single chamber pacemakers is divided into two components parts, professional and technical. The professional component involves paying medical professionals for interpreting diagnostic tests; the technical component involves paying the overhead costs of the private party performing the service. The Secretary represents, and the Court accepts, that this case is restricted to Part B reimbursements for the technical component of telephonic analysis of such pacemakers.

Under Part B, the private party, or carrier, acts as an agent for the Secretary in administering Medicare reimbursements. 42 U.S.C. § 1395u. When a claim is submitted, the carrier determines whether the claim is covered by Medicare and, if so, in what amount. 42 U.S.C. § 1395u. The carrier cannot decide "any issue or factor for which the Social Security Administra-

---

1. This service involves transmitting pacemaker rhythms over a telephone wire, thus enabling a physician to monitor the device.

tion ("SSA") or the Health Care Financing Administration ("HCFA") has sole responsibility." 42 C.F.R. § 405.803(c)(1). This decision is "final and binding" unless further review is requested. 42 C.F.R. § 405.806.

A dissatisfied party's initial step in the review process is to request carrier reconsideration of its decision. 42 C.F.R. § 405.807. "[T]he carrier shall review the claim in dispute and, upon the basis of the evidence of record, shall make a separate determination affirming or revising in whole or in part the findings and determination in question." 42 C.F.R. 405.810.

If the party is dissatisfied with the carrier's determination upon reconsideration, it can request a hearing before the carrier. 42 C.F.R. § 405.820. The carrier chooses a hearing officer, 42 C.F.R. § 405.823, and his decision is "final and binding" unless further review is requested, 42 C.F.R. § 405.835.

If the hearing officer's decision is adverse, the dissatisfied party can request administrative review. The extent of this review is the same as that outlined in 42 U.S.C. § 405(b). The party initially requests a hearing before an administrative law judge. 20 C.F.R. § 404.929. If dissatisfied with that decision, the party can request review by the Appeals Council. 20 C.F.R. § 404.967. The decision of the administrative law judge, or of the Appeals Council if it elects to review the administrative law judge's decision, is the final decision of the Secretary. If the party is still dissatisfied, it can seek judicial review of the final decision. 42 U.S.C. § 1395ff(b)(1).

FACTS. Plaintiff has outlined the relevant facts in its amended complaint, and the Court adopts these facts for purposes of this Order: Plaintiff performs telephonic analysis of single chamber pacemakers. It has entered into an arrangement with the Secretary whereby the latter, through a local carrier, Blue Cross and Blue Shield of Arkansas ("Blue Cross"), has agreed to pay plaintiff for the service it provides to Medicare beneficiaries. Blue Cross is required to pay plaintiff for a portion of the claims in which the former is a co-insurer.

42 U.S.C. § 1395u(b)(18) provides that the Secretary shall determine, by use of the best available data, the national median payment of the charges associated with nineteen separate diagnostic tests. This national median was the basis for determining the allowable charge for these nineteen diagnostic tests as of January 1, 1991.

The service performed by plaintiff, *i.e.*, telephonic analysis of single chamber pacemakers, is one of the tests designated by the Secretary in accordance with § 1395u(b)(18). The Secretary had sufficient data to determine the national median of the charges associated with this service, but he used an improper methodology to determine the national median. He erroneously determined that $15.73 was the allowable charge for the technical component. He later realized that he had used an improper methodology and revised the allowable charge to $34.38 for claims submitted from November 1, 1991, through December 31, 1991.

From January 1, 1991, through October 31, 1991, plaintiff submitted 4,724 claims to Blue Cross. Because of the Secretary's failure to use the proper methodology in determining the allowable charge, plaintiff was underpaid $36,327.56 for Medicare claims and approximately $5,442.05 on amounts due from Blue Cross as co-insurer. Plaintiff has demanded that the defendants reimburse it at the correct rate for the claims it submitted between January 1, 1991, through October 31, 1991, but they have refused to give the re-calculated rate retroactive application.

THE SECRETARY'S POSITION. The Secretary alleges that the jurisdictional basis alleged by plaintiff, 28 U.S.C. § 1331, is not proper because the Medicare statute explicitly precludes federal question jurisdiction over any claim "arising under" the Act. Because plaintiff's claim allegedly "arises under" the Act in that it provides both the standing and substantive basis of the claim, the Court lacks subject matter jurisdiction.

The Secretary also alleges that the Court does not derive jurisdiction from the Act itself. He alleges that its statutory structure prescribes the exclusive procedure for judicial review of contested Medicare

claims, and this review is not available unless the procedure is followed. Because plaintiff has failed to exhaust its administrative remedy, thus obtaining a final decision, it is precluded from seeking judicial review.

PLAINTIFF'S POSITION. In response, plaintiff advances several arguments. It first alleges that it is challenging the methodology used by the Secretary, not an amount determination, and the Court has jurisdiction pursuant to § 1331. Assuming, *arguendo*, that exhaustion is necessary, it alleges that it has been attempting to administratively resolve this dispute since January, 1991, but has been unsuccessful. Moreover, it alleges that any further attempt to exhaust its remedy would be futile because it is challenging an explicit HCFA policy and the hearing officer is incapable of resolving such a dispute. Thus, it takes the position that the requirement should be waived.

ANALYSIS. As the foregoing demonstrates, the pleadings submitted by the parties raise several issues. It appears to the Court that the initial inquiry is whether a Part B claim must be exhausted prior to the claim being litigated in this forum.

■ As a preliminary matter, the Court finds that the plaintiff's claim "arises under" the Act. The Court agrees with the Secretary that the Act provides both the standing and substantive basis of this claim.

Given this finding, the Court notes that the Act incorporates the jurisdictional provisions of § 405(g). 42 U.S.C. § 1395ff(b). Section 405(g) is more restrictive than § 1331 because it requires exhaustion of an administrative remedy before seeking judicial review. As the Supreme Court stated in *Heckler v. Ringer*, 466 U.S. 602, 614–15, 104 S.Ct. 2013, 2021, 80 L.Ed.2d 622 (1984), "§ 405(g), to the exclusion of ... § 1331, is the sole avenue for judicial review for all 'claim[s] arising under' the ... Act." [quotation omitted].

In a subsequent decision, *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986), the Supreme Court narrowed its *Ringer* holding. In *Michigan Academy*, the Court recognized certain instances in which the jurisdictional restriction of § 405, *i.e.*, the exhaustion requirement, would not apply to claims "arising under" the Act. This finding was based upon the failure of the Act to provide for any type of review for Part B claims. The Court noted the following:

> Section 405(h) does not apply on its own terms to Part B of the Medicare program, but is instead incorporated *mutatis mutandis* by § 1395ii. The legislative history of both the statute establishing the Medicare program and the 1972 amendments thereto provides specific evidence of Congress' intent to foreclose review of only 'amount determinations'— *i.e.*, those 'quite minor matters,' [citation omitted], remitted finally and exclusively to adjudication by private insurance carriers in a 'fair hearing.' [Footnote omitted]. By the same token, matters which Congress did *not* delegate to private carriers, such as challenges to the validity of the Secretary's instructions and regulations, are cognizable in courts of law. In the face of this persuasive evidence of legislative intent, we will not indulge the Government's assumption that Congress contemplated review by carriers of "trivial" monetary claims, [citation omitted], but intended no review at all of substantial statutory and constitutional challenges to the Secretary's administration of Part B of the Medicare program. This is an extreme position, and one we would be most reluctant to adopt without "a showing of 'clear and convincing evidence,'" [citation omitted], to overcome the "strong presumption that Congress did not mean to prohibit all judicial review" of executive action, [citation omitted]. We ordinarily presume that Congress intends the executive to obey its statutory commands and, accordingly, that it expects the courts to grant relief when an executive agency violates such a command.

*Id.* 680, 106 S.Ct. at 2140–41. Thus, "there is jurisdiction in federal courts to hear statutory and constitutional challenges to the validity of rules and regulations promulgated under the ... Act, regardless of wheth-

er there has been a final decision of the Secretary." *Abbey v. Sullivan,* 788 F.Supp. 165, 168 (S.D.N.Y.1992). It also true that "there is no federal jurisdiction, absent full exhaustion of administrative remedies and a final decision of the Secretary, when ... plaintiff merely challenges the amount of benefits awarded by the Secretary." *Id.*

■ The Secretary takes the position, however, that *Michigan Academy* is no longer applicable in light of the 1986 amendments to the Act, amendments which provided for review of Part B claims. In support of his position, he cites the Court to *National Kidney Patients Association v. Sullivan,* 958 F.2d 1127 (D.C.Cir.1992). The Court quotes liberally from that case:

Resolution of the jurisdictional issue requires a choice between two lines of precedent. On one side is a line of Social Security cases—[numerous citations omitted]—followed by a part A Medicare decision, *Heckler v. Ringer,* ... These construe §§ 405(g) and 405(h) of the Social Security Act, 42 U.S.C. §§ 405(g) and (h), both as originally enacted and as later incorporated by reference into Medicare part A, as establishing a rigorous scheme requiring both "presentment" (an absolute prerequisite) and exhaustion (a prerequisite that may be excused only under rather limited conditions). On the other side is a rule that the Supreme Court developed for Medicare part B disputes at a time when the statutes treated them differently from ones under part A. Under this approach, disputes over "amounts" were (per statutes) completely removed from judicial review, ..., whereas disputes over "methodology" could be brought under 28 U.S.C. § 1331's provision for general federal question jurisdiction, subject only to conventional exhaustion requirements, see *Bowen v. Michigan Academy of Family Physicians,* ...

If the ... *Ringer* line controls, then [the plaintiff's] failure to "present" its claim to the Secretary's delegate, the insurance carrier, bars jurisdiction. If the ... *Michigan Academy* line controls, the district court plainly had jurisdiction, as the dispute was over methodology. Because Congress has now brought Medicare part B disputes under the same regime as ones under part A, and because the Supreme Court has treated part A disputes as indistinguishable from Social Security ones, we find the ... *Ringer* line controlling.

*Id.* at 1130.

The Court acknowledges that there is considerable disagreement as to the continued viability of *Michigan Academy.* The Court is aware of several cases attesting to the continued viability of that case: *Kuritzky v. Blue Shield of Western New York, Inc.,* 850 F.2d 126, 128 (2nd Cir.1988), *cert. denied,* 488 U.S. 1006, 109 S.Ct. 787, 102 L.Ed.2d 778 (1989); *McCuin v. Secretary of Health and Human Services,* 817 F.2d 161, 164–66 (1st Cir.1987); *Medical Fund–Philadelphia Geriatric Center v. Heckler,* 804 F.2d 33, 38–39 (3rd Cir.1986); *Abbey v. Sullivan, supra; Griffith v. Bowen,* 678 F.Supp. 942, 945 (D.Mass.1988).[2] Having given the competing cases careful consideration, the Court finds that the better rule is that articulated in *Kidney Patients, i.e.,* Part B claims are also subject to the exhaustion requirement of § 405(g). Thus, the Court need not delve into the distinction between "method" and "amount" challenges. Plaintiff is required to exhaust its administrative remedy.

Notwithstanding the foregoing, there are instances in which exhaustion is not required. *National Kidney Patients Association v. Sullivan,* 958 F.2d at 1130 (exhaustion is a prerequisite that may be excused under rather limited conditions). The Court turns to consider whether exhaustion may be excused in this instance.

**2.** The *Griffith* court was of the opinion that *Michigan Academy* and the 1986 amendments addressed different issues: "... Congress saw fit to provide for some judicial review of certain benefit denials under Medicare Part B, while the Supreme Court held that there is almost always jurisdiction to review acts challenged as unlawful and unconstitutional, and that such jurisdiction was available for Medicare Part B challenges under the grant of general federal jurisdiction."

Plaintiff initially alleges that it has been attempting to administratively resolve this dispute since January, 1991, but has been unsuccessful. Although it undoubtedly wrote several letters to the defendants requesting reimbursement, its letter writing campaign is not the type of administrative exhaustion envisioned by the Act.

Plaintiff also alleges that exhausting its remedy would be futile because it is challenging an explicit HCFA policy and the hearing officer cannot resolve such a dispute. It represents that 42 C.F.R. § 405.860 requires the hearing officer to comply with the Act, its implementing regulations, policy statements, instructions, and all other guides issued by the HCFA. Given the nature of its challenge, the hearing officer would be compelled to deny the claim. Thus, it maintains that the requirement should be waived.

The parties agree that two factors should be considered in determining whether the exhaustion requirement should be waived: first, whether the claim is collateral to a substantive claim for entitlement to benefits; and second, whether exhaustion would be futile. An administrative remedy is inadequate, and thereby futile, if it "will not give relief commensurate with the claim or the remedy would be so unreasonably delayed as to create a serious risk of irreparable injury." *Patsy v. Florida International University*, 634 F.2d 900, 903 (5th Cir. 1981). The remedy is also inadequate if it "is clear that the claim will be rejected." *Id.* at 904.

The first factor clearly weighs in favor requiring exhaustion. Plaintiff's claim is not collateral to a substantive claim but is rather a substantive claim itself.

The second factor is somewhat more difficult. The Court acknowledges that the assertion made by plaintiff has some merit, especially the contention that the administrative remedy would be so unreasonably

delayed as to create a serious risk of irreparable injury.[3] The Court is cognizant that compelling it to exhaust its remedy could "very well ... [drive it] ... out of business." Given the purposes of the exhaustion requirement,[4] however, this speculative financial burden is not an adequate basis for excusing the requirement. Every litigant seeking judicial review of any type of adverse administrative decision surely faces a financial burden of some type, and the Court is not prepared to find that the burden plaintiff alleges is exceedingly overwhelming.

On the basis of the foregoing, the Court finds that this case is not an instance in which the exhaustion requirement should be waived. Plaintiff is required to exhaust its administrative remedy before seeking judicial review.

CONCLUSION. Because plaintiff has failed to allege a proper basis for federal jurisdiction, the Secretary's motion is granted. The complaint is dismissed.

IT IS SO ORDERED.

---

**3.** For the reasons outlined in the Secretary's reply brief, the Court is persuaded, though, that the administrative process could award plaintiff relief commensurate with its claim and that its claim would not be summarily rejected.

**4.** The purposes of this requirement are many. Two of the purposes particularly relevant in this instance are: (1) allowing the Secretary to develop the necessary factual background upon which a decision should be based and (2) permitting the Secretary to exercise his discretion and apply his expertise.