**MICHIGAN ASSOCIATION OF INDEPENDENT CLINICAL LABORATORIES, et al., Plaintiffs–Appellants,**

v.

**Donna E. SHALALA, Secretary of Health and Human Services and Blue Cross/Blue Shield of Michigan, Defendants–Appellees.**

No. 92–2554.

United States Court of Appeals, Sixth Circuit.

Argued June 21, 1994.

Decided Dec. 19, 1994.*

Rehearing Denied Feb. 21, 1995.

---

* This decision was originally issued as an "unpub- lished decision" filed on December 19, 1994.

On March 31, 1995, the court designated the opinion as one recommended for full-text publication.

its final judgment dismissing the action for lack of subject matter jurisdiction due to failure to exhaust administrative remedies. For the reasons that follow, we affirm.

Raymond J. Sterling (argued and briefed), Driggers, Schultz, Herbst & Paterson, Troy, MI, for plaintiffs-appellants.

Ted Yasuda (argued and briefed), Dept. of Health and Human Services, Office of the Gen. Counsel, Region V, Chicago, IL, Mary S. Rigdon, Asst. U.S. Atty., Detroit, MI, for defendants-appellees.

Before: KEITH, NORRIS, and BATCHELDER, Circuit Judges.

BATCHELDER, Circuit Judge.

This suit was filed on May 8, 1990, by plaintiffs-appellants, the Michigan Association of Independent Clinical Laboratories ("MAIL") and four of its member laboratories, against defendants-appellees, the Secretary of Health and Human Services (the "Secretary") and the Blue Cross/Blue Shield of Michigan ("BCBS"). In its complaint, MAIL alleged that defendants violated several provisions of the Medicare Act (the "Act"). Specifically, MAIL alleged that the defendants violated provisions of Part B of the Act, 42 U.S.C.A. §§ 1395j–1395w–4 (West 1992 & Supp.1995), by changing the level of reimbursement for six particular lab tests.

On October 29, 1992, the district court heard oral arguments on defendants' motion to dismiss and plaintiffs' motion for summary judgment. At the conclusion of argument, the district court dismissed the plaintiffs' case for lack of subject matter jurisdiction, concluding that this was an "amount determination" case and that the plaintiffs failed to exhaust their administrative remedies. On October 30, 1992, the district court entered

## I.

This case arises under Title XVIII of the Social Security Act. 42 U.S.C.A. §§ 1395–1395ccc (West 1992 & Supp.1995). Title XVIII establishes programs to provide medical benefits for the aged and disabled. Title XVIII is divided into two main sections: Part A (42 U.S.C.A. §§ 1395c–1395i–4) and Part B (42 U.S.C.A. §§ 1395j–1395w–4), that are known collectively as "Medicare." This action is primarily concerned with the provisions of Part B.

Medicare Part B is analogous to a private medical insurance program, subsidized in large part by the federal government. Part B is a voluntary program of supplementary medical insurance covering, in general, physician services, durable medical equipment, and certain other medical and health services, such as outpatient hospital services and laboratory tests—the dispute in this case.

Congress authorized the Secretary to contract with private insurance "carriers"—such as BCBS of Michigan—to administer the payment of qualifying claims. 42 U.S.C.A. § 1395u (West Supp.1995). The Part B carrier determines whether a claimed service or item is medically necessary and is otherwise covered under Part B, and establishes the reimbursement that may be paid using federal funds. In performing these functions, the carrier is required to use the coverage and reimbursement criteria prescribed by the statute and the Secretary.

The plaintiffs' complaint in this case focuses on the reclassification of six tests by BCBS from "reasonable charge" reimbursement rates [1] to "automated panel" reimburse-

1. Prior to 1984, carriers were authorized to reimburse lab tests under any of the four "reasonable charge" standards set forth in the Medicare statute and regulations. *See generally Association of Seat Lift Mfrs. v. Bowen*, 858 F.2d 308, 310 (6th Cir.1988), *cert. denied*, 489 U.S. 1078, 109 S.Ct. 1528, 103 L.Ed.2d 833 (1989). The

Deficit Reduction Act of 1984 changed the method by which fee schedules were calculated. The Deficit Reduction Act provided that fee schedules for laboratory tests would be set at 60% of the carrier-wide prevailing charge, as defined by statute. *See* 42 U.S.C.A. § 1395l(h)(2)(A) (West Supp.1995).

ment rates.[2] The Health Care Financing Administration ("HCFA"), the operating component of the Department of Health and Human Services, addressed the subject of laboratory testing in its Part B Medicare Carrier's Manual (the "Manual"), issued pursuant to the Secretary's authority to issue interpretive guidelines for the Medicare program. The Manual explained that many tests "can be and are frequently done as groups and combinations on automated multichannel equipment." However, carriers may "receive claims for laboratory services in which the physician or laboratory has separately billed for tests that are commonly available as part of an automated battery test." To address this problem, the Manual instructed that when the sum of the reasonable charge for the separately billed tests exceeded the prevailing charge for the automated battery, the "lesser amount should be determined to be the reasonable charge."[3]

In 1978, the Manual identified twenty tests which were, and are, considered to be commonly performed as part of an automated battery. The Manual also suggested that consultations by the carrier with representatives from the medical profession and independent laboratory associations "should be helpful" and "may be able to identify those laboratory tests in the areas that are most commonly performed on automated equipment." However, the Manual authorized the carriers to determine ultimately which tests to include in light of circumstances prevailing in the carrier's service area.

Acting in conformance with the Manual, BCBS sought input from local laboratories, including MAIL, regarding the use of auto-

mated testing equipment. In its response, MAIL indicated that it did not oppose the institution of a system of reimbursement based on automated panel rates; however, MAIL indicated that its members felt that the twenty tests in the Manual should be narrowed to fourteen tests which "can be done on automated equipment that is readily and generally available throughout the state."

BCBS responded by letter on March 8, 1979, informing MAIL that they would initially administer the new program in accordance with MAIL's suggestions, i.e., only the fourteen tests identified by MAIL as being done on automated equipment that is readily available would be reimbursed at automated panel rates. However, BCBS expressly noted that "further evaluation of the number of commonly available automated tests in Michigan" would eventually be necessary.

There is some indication in the record that BCBS was concerned that the list of automated tests was underinclusive; however, BCBS did not directly address this issue until 1985, when a PATROL[4] initiative addressing automated testing was issued. The PATROL initiative informed carriers that three additional tests should be treated as part of an automated panel.[5] The Initiative continued:

> To effect savings in program payments, all carriers are being asked to review their list of tests priced as part of a panel to ensure the above tests are included. If they are not on your list of panel tests, we would like you to add the above three tests to your list of automated panel tests as

---

2. In the late 1960's an instrument known as the SMA 12/60 was developed. From one specimen, this instrument could automatically provide test results for a panel of 12 chemistry tests at a rate of 60 specimens per hour. These 12 tests were known as a "battery," "panel," or "automated panel" of tests. Tests run on an SMA 12/60, or other piece of automated equipment, are generally less expensive than tests that are performed manually. As a result, the HCFA determined that those tests which are frequently performed on automated equipment would be reimbursed at lower rates than tests performed manually.

3. For example, if a doctor ordered tests A, B, and C, and if all three were on the list of automated

tests, the BCBS would reimburse the laboratory at the automated panel reimbursement rate for three automated tests, regardless of whether these tests were billed separately.

4. PATROL is an acronym for "Patrol Administration To Reduce Overpayments and Losses." The PATROL program is administered by the HCFA central office to alert the HCFA regional offices and carriers about overpayment and loss issues to determine whether savings in program expenditures could be achieved.

5. These were tests for: triglycerides, creatine phosphokinase (CPK), and gamma glutamnyl transpeptidase (GGTP).

soon as possible, but no later than April 1, 1985. . . .

We would also like to review and possibly update the current MCM listing of panel tests. Please identify (narrative and code) any other tests not currently listed in the MCM that you have added to your list of panel tests, along with the date of the accretions.

BCBS thereafter informed HCFA that it would treat tests for triglycerides, CPK, and GGTP as commonly performed on automated equipment. In addition, BCBS informed HCFA that it had decided to add a variety of other tests to its list of automated panel tests, including tests for three electrolytes—sodium, potassium, and chloride.

Upon learning of the reclassification of these tests, MAIL strongly protested through a series of letters aimed first at BCBS and then at HCFA. At no time did hearings before an Administrative Law Judge (ALJ) or other administrative proceedings take place. Not obtaining the desired result through the general letter writing campaign, MAIL filed suit in federal court.

## II.

Before proceeding on to the merits of this appeal, it is necessary to explain the background against which plaintiffs' Part B claims arise. The plaintiffs assert claims that arose both before and after the 1986 amendments to the Medicare Act; therefore, it is helpful to review the schemes in effect to deal with Part B claims both before and after the amendments.

### A. Pre–1987 Claims

Before the 1986 Amendments, the Medicare statute provided administrative and judicial review of Part A claims (not Part B) in the same manner as claims brought under Title II of the Social Security Act:

(b)(1) Any individual dissatisfied with any determination under subsection (a) as to—

. . . .

(C) the amount of benefits under part A (including a determination where such amount is determined to be zero)

shall be entitled to a hearing thereon by the Secretary to the same extent as is provided in [42 U.S.C. § 405(b) ] and to judicial review of the Secretary's final decision after such hearing as is provided in [42 U.S.C. § 405(g) ].

42 U.S.C.S. § 1395ff(b)(1) (Law. Co-op.1973 & Supp.1982) (amended 1986).

For services rendered prior to January 1, 1987, the following administrative scheme was the sole recourse for a disgruntled Part B claimant challenging the amount of reimbursement.

1. When a supplier submitted an assigned claim, the carrier as the Secretary's agent made an initial determination regarding whether the services were covered and the amount of reimbursement due. 42 C.F.R. § 405.803 (1986).

2. If the supplier was dissatisfied with the initial determination and wished to appeal, it had six months from the initial determination to request a "review determination" to be conducted by the carrier. 42 C.F.R. §§ 405.807–.810 (1986).

3. If the supplier remained dissatisfied and the claim was at least $100, the supplier could request within six months of the review determination a hearing before a carrier-appointed officer. 42 C.F.R. §§ 405.820, 405.823 (1986).

The hearing officer's decision was final and binding upon the supplier. 42 C.F.R. § 405.835 (1986). Prior to the 1986 Amendments, the Medicare statute did not authorize further administrative or judicial review. 42 U.S.C.S. §§ 1395u(b)(3)(C), 1395ff(b)(1) (Law. Co-op.1973 & Supp.1982).

This Court, in *Association of Seat Lift Mfrs. v. Bowen,* 858 F.2d 308 (6th Cir.1988), *cert. denied,* 489 U.S. 1078, 109 S.Ct. 1528, 103 L.Ed.2d 833 (1989), gave a succinct overview of the state of the law, as the above provisions were interpreted in relation to Part B disputes, prior to Congress' 1986 amendment of the Medicare statute.

It is fundamental that "jurisdiction to review Medicare reimbursement determinations is available only as prescribed in the Medicare Act." [Citations omitted].

"Appeals from adverse determinations on cost reimbursement under the Medicare Act may be had only as specifically set forth by Congress." [Citation omitted].

In applying this principle, the Supreme Court in *United States v. Erika*, 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982), announced that the Medicare statute precluded federal court jurisdiction over determinations of the "amount of benefits" that were payable under Part B of the Act. The Court relied upon the "precisely drawn provisions" of 42 U.S.C.A. § 1395ff(b) (West 1983), which provided for hearings by the Secretary and judicial review regarding general eligibility to participate in Part A and Part B, and the amount of benefits payable under Part A, but "conspicuously" failed to authorize such administrative or judicial review of Part B payment determinations. 456 U.S. at 207–08, 102 S.Ct. at 1653–54. The Court concluded that the "omission" provided "persuasive evidence" that Congress intended to foreclose judicial review of such determinations, and reasoned that the legislative history of § 1395ff(b) confirmed this conclusion. *Id.* at 208–11, 102 S.Ct. at 1654–56. Accordingly, the Court decided that a Part B supplier's challenge to a Carrier's interpretation and application of the statutory and regulatory "reasonable charge" provisions, which the supplier cited as a basis for contesting the "amount of benefits," was precluded by the statute.

Subsequent to its decision in *Erika*, the Supreme Court affirmed this Circuit's decision in *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986) where it defined the test for preclusion of judicial review of Medicare, Part B payment determinations. In *Michigan Academy*, the Supreme Court mandated judicial review under circumstances where a supplier's claim could not be adjudicated at a Carrier "fair hearing" prescribed by the statute. [Footnote omitted]. In that case, the court authorized judicial review for ... challenges to the reasonable charge determination methodology employed by the Carrier

in deriving a reasonable charge for services for durable medical equipment. *Id.* at 314. Thus, the rule, prior to the Act's 1986 amendment by Congress, was that " 'federal jurisdiction exists where there is a challenge to the validity of an agency rule or regulation, but jurisdiction is lacking where the claim is merely that the insurance carrier misapplied or misinterpreted valid rules and regulations.' " *Abbey v. Sullivan*, 978 F.2d 37, 42 (2d Cir.1992) (quoting *Kuritzky v. Blue Shield of Western N.Y., Inc.*, 850 F.2d 126, 128 (2d Cir.1988), *cert. denied*, 488 U.S. 1006, 109 S.Ct. 787, 102 L.Ed.2d 778 (1989)).

### B. Post–1986 Claims

For services rendered on or after January 1, 1987, Congress amended 42 U.S.C. § 1395ff to provide for the first time for judicial review of Part B Medicare disputes. *See* Omnibus Budget Reconciliation Act of 1986, Pub.L. No. 99–509, § 9341(a)(1), 100 Stat. 1874, 2037–38 (1986) (codified at 42 U.S.C. § 1395ff). As a result of the amendment, 42 U.S.C.A. § 1395ff(b)(1) (West 1992 & Supp.1995) now provides in pertinent part:

(b)(1) Any individual dissatisfied with any determination under subsection (a) of this section as to—

. . . .

(C) the amount of benefits under part A or part B of this subchapter (including a determination where such amount is determined to be zero) . . .

. . . .

shall be entitled to a hearing thereon by the Secretary to the same extent as is provided in section 405(b) of this title and to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title. . . .

The cross-referenced statute, 42 U.S.C.A. § 405(g) (West Supp.1995), provides in pertinent part:

Judicial Review. Any individual, after any final decision of the Secretary made after a hearing to which he was a party ... may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision. . . . The findings of the Secretary as

to any fact, if supported by substantial evidence, shall be conclusive

. . . .

Thus, a Part B claimant must now pursue the following steps to seek a remedy.[6]

1. As before, a supplier which has received an assigned claim must obtain an initial determination from the carrier regarding whether the services are covered and the amount of reimbursement due. 42 C.F.R. § 405.803 (1994).

2. A supplier wishing to appeal an initial determination must, as before, request a "review determination" within six months of the initial determination. 42 C.F.R. §§ 405.807–.808 (1994). As before, the review determination includes an opportunity to present "written evidence and contentions" in support of the claim and requires the carrier to conduct a record review of its initial determination. 42 C.F.R. §§ 405.809–.810 (1994).

3. If the supplier remains unsatisfied and the amount in controversy is at least $100, the supplier may request a carrier hearing within six months of the review determination. 42 C.F.R. §§ 405.815, 405.820 (1994). If the amount in controversy is "at least $100, but less than $500," review is limited to a "fair hearing" conducted by the hearing officer designated by the carrier. 42 U.S.C.A. 1395u(b)(3)(C) (West Supp.1995).

4. If the amount in controversy is $500 or more, the supplier must still obtain a carrier fair hearing, but may in addition appeal that determination to an ALJ if the amount in controversy remains $500 or more. 42 C.F.R. § 405.815.

5. Finally, where the amount in controversy after exhaustion of administrative remedies is $1000 or more, the supplier may seek judicial review of the Secretary's final decision by filing suit within sixty days of the Secretary's final decision. 42 C.F.R. § 405.815; 42 U.S.C.A. §§ 405(g), 1395ff(b)(1), (b)(2)(B).

6. After the parties filed this action, some of the relevant provisions in the Code of Federal Regulations were amended. These amendments do

## C. The Present Action

It is against the above statutory background that the plaintiffs bring their present action. In a nutshell, plaintiffs argue that their pre–1987 claims were challenges to the "methods" utilized by the Secretary and the carrier for determining reimbursement rates; thus, plaintiffs assert that with respect to those claims they fall within the exception to nonreviewability of Part B claims created by *Michigan Academy.*

With respect to their post–1986 claims, plaintiffs argue that they attempted to exhaust their administrative remedies by engaging in the five year letter writing crusade; or, in the alternative, if they have not exhausted their administrative remedies, the *Michigan Academy* amount/method distinction survived the Act's 1986 amendments and they are entitled to judicial review under general federal question jurisdiction.

The Secretary counters that plaintiffs' claims are challenges to the amount of reimbursement they receive, and not to the method by which they are calculated; and therefore, judicial review is clearly barred by the pre–1986 version of the Act and the Supreme Court's pronouncement in *Erika.* With respect to plaintiffs' post–1986 claims, the Secretary asserts that plaintiffs' claims are unreviewable because they have failed to exhaust their administrative remedies, and the amount/method dichotomy was abolished by the Act's 1986 amendments granting judicial review to amount claims arising under Part B.

## III.

### A.

■ The district court's resolution of legal issues regarding jurisdiction is subject to *de novo* review. *Pohlmeyer v. Secretary of Health & Human Servs.,* 939 F.2d 318, 320 (6th Cir.1991). However, the determination of any underlying facts by the district court is subject to a clearly erroneous standard. *United States v. Oswald,* 783 F.2d 663, 666 (6th Cir.1986).

not affect this action, but this opinion incorporates them in setting forth the correct regulatory framework. *See* 59 Fed.Reg. 12182–83 (1994).

At the close of oral argument, the district court stated "[t]his is an amount determination case." As noted above, the amount/method determination is critical to the plaintiffs' case with respect to their pre–1987 claims because under *Erika,* a challenge to the amount of reimbursement is precluded from judicial review.

Plaintiffs attempt to avoid the mandate of *Erika* by asserting that their challenge is to the method of reimbursement, thus rendering their claims reviewable under *Michigan Academy.* The question of whether any given claim is a challenge to the amount or method of reimbursement is tricky and has given the federal courts a great deal of trouble. As the Fifth Circuit noted: "It is crucial to go beyond semantics because all challenges to Part B benefit determinations can be recast as reviewable challenges to methodology since all awards of Part B benefits or payments are based on a method of calculation." *Texas Medical Ass'n v. Sullivan,* 875 F.2d 1160, 1165 (5th Cir.), *cert. denied,* 493 U.S. 1011, 110 S.Ct. 573, 107 L.Ed.2d 568 (1989). And the Tenth Circuit has held: "The term 'method,' from this perspective, 'does not mean the carrier's method of applying the regulations, which *Erika* held was unreviewable; rather, it means the method set forth in the Secretary's regulatory scheme that prescribes how the carriers are to calculate benefits.'" *Downtown Medical Center/Comprehensive Health Care Clinic v. Bowen,* 944 F.2d 756, 764 (10th Cir.1991) (quoting *Kuritzky v. Blue Shield of Western N.Y., Inc.,* 850 F.2d 126, 128 (2d Cir.1988), *cert. denied,* 488 U.S. 1006, 109 S.Ct. 787, 102 L.Ed.2d 778 (1989)).

Examples of reviewable method challenges are found in *Michigan Academy,* 476 U.S. at 668, 106 S.Ct. at 2134 (physicians filed suit to challenge the validity of 42 C.F.R. § 405.504(b)); *American Ambulance Serv. of Pa., Inc. v. Sullivan,* 911 F.2d 901, 903 (3rd Cir.1990) (challenge that Carrier Manual provision and HCFA Regional Medicare letter impermissibly modify the Medicare statute); *Griffith v. Bowen,* 678 F.Supp. 942, 943 (D. Mass.1988) (claim that list promulgated by Secretary which predetermines whether item of durable medical equipment is covered by Act, when plaintiffs alleged that Secretary was required to give every claim individualized attention).

■ The plaintiffs contend their "challenge is not based on a claim that the Secretary erroneously applied valid rules and regulations to determine the reimbursements; rather, plaintiffs' challenge is based on a claim that the rules and regulations themselves were erroneous." The plaintiffs' assertions on appeal, however, are belied by the allegations in their complaint. At ¶ 23 of their complaint, the plaintiffs allege:

(A) As of July 1, 1984, Congress required fee schedule amount to be set at 60% of the carrier-wide prevailing charges to be adjusted annually by the percentage increase or decrease in the urban consumer price index.

(B) Blue Cross was to calculate the appropriate prevailing charges by determining the 75th percentile of the customary charges for each service weighted by frequency for laboratories in its service area. 42 USC 13951 [Sic]; 42 CFR 405.504(a)(2).

(C) Upon information and belief, Blue Cross's *method of calculation of these amounts was not in accordance with statutory criteria.*

(Emphasis added). Here, the plaintiffs challenge only BCBS's perceived misapplication or misinterpretation of the statutory criteria; this is not a challenge to the validity of the statute itself.

■ Plaintiffs also attempt to cast their claim in the shape of a method challenge by asserting that the PATROL initiative, issued by HCFA and relied upon by BCBS, was itself an invalid attempt at rulemaking that violated the notice and comment and other provisions of the Administrative Procedure Act. As correctly noted by the plaintiffs, agency rules which require publication "are those which effect a change in existing law or policy" or remove previously existing rights. *Powderly v. Schweiker,* 704 F.2d 1092, 1098 (9th Cir.1983). However, it was not the PATROL initiative, but the Medicare Manual itself which originally designated the tests in question to be reimbursed as automated panel tests. The Manual would have permitted

BCBS to add the six tests at issue in this case at any time it determined that these tests were being commonly performed on automated machines. In addition, plaintiffs were specifically on notice that additions might be made to the fourteen tests already billed as panel tests. In their March 8, 1979, letter to MAIL indicating that they would initially bill only the fourteen tests suggested by MAIL as automated panel tests, BCBS noted, "We must ultimately address ... the further evaluation of the number of commonly available automated tests in Michigan." As a result, the PATROL initiative and the addition of the six tests to the automated panel list cannot serve as a basis for the plaintiffs' claim that their challenge is to the method of reimbursement. At best, plaintiffs' argument as to the PATROL initiative and the six additional tests is a complaint that HCFA and BCBS misapplied or misinterpreted the Secretary's interpretive guidelines with respect to laboratory testing, as laid out at § 5114 of the Manual.[7] The plaintiffs' challenge is not to the facial validity or soundness of the interpretive guidelines; thus, this does not constitute a challenge to the methods of reimbursement. *Cf. American Ambulance,* 911 F.2d at 903 (plaintiffs alleged that Carrier Manual itself impermissibly modified the Medicare statute).

■ Additionally, plaintiffs contend that the Secretary should be estopped from arguing that this is an amount case because "defendants acted as if no hearing were available as would be the case with a method determination case." This argument is without support or merit. It is the Secretary's position that no hearing was granted because the plaintiffs failed to ask for one, or, if they did ask for one it was from the wrong party. There is no indication in the record that the Secretary or BCBS failed to grant a hearing because they considered this to be a challenge to their methods; to the contrary, they both argue that this case is clearly an amount determination case.

In conclusion, because the plaintiffs are not challenging the facial validity of any rule or regulation, but only the amount of reimbursement that they receive as a result of the defendants' interpretation of rules and regulations, the district court correctly determined that this is an amount determination case. As a result, the Supreme Court's pronouncement in *Erika* renders the plaintiffs' pre–1987 claims unreviewable.

**B.**

The question of whether the amount/method distinction survived the 1986 amendments to the Act is a non-issue in this case for two reasons: First, because we have determined that the plaintiffs' challenges are to the amount of reimbursement, the plaintiffs are required to exhaust their administrative remedies under either version of the Act; and second, shortly before oral argument, this Court in *Farkas v. Blue Cross & Blue Shield of Mich.,* 24 F.3d 853, 860 (6th Cir.1994), specifically rejected the continuing viability of the amount/method distinction after the 1986 amendments to the Act.

**C.**

■ As discussed above, whether or not plaintiffs' claim is considered to be an amount or method claim, after the 1986 amendments to the Act the plaintiffs must exhaust their administrative remedies before seeking review in federal court. *See Heckler v. Ringer,* 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984).

■ It is undisputed that plaintiffs did not actually exhaust their administrative remedies. There is no administrative record and no decision by an ALJ. Nonetheless, MAIL and its member laboratories assert they attempted to exhaust their administrative remedies by engaging in "exhaustive futile attempts to obtain a hearing for five years." This assertion is based on a number of letters written by MAIL, first to BCBS and then to HCFA. The Secretary, on the other hand, contends that the plaintiffs' letters do not qualify as attempts to trigger administrative review because "general letters raising multiple issues in the abstract, and without

---

7. The Secretary has authority to issue interpretive guidelines pursuant to 5 U.S.C.A. § 553 (West 1977), 42 U.S.C.A. § 1302 (West 1991), and 42 U.S.C.A. § 1395hh (West 1992).

reference to any specific claim decided on a specific date and in a specified dollar amount, do not qualify as an appeal. This fundamental defect applies to all of the correspondence upon which plaintiffs rely."

After reviewing all of the correspondence in this case, the district court stated that, "[t]here is a very specific procedure to be followed to bring to the attention of the appropriate agencies the matters of concern to the plaintiffs," and "based on the facts as I have them before me on this record, the plaintiffs have failed to exhaust that administrative review process."

A brief recap of the process for review of Medicare claims is helpful at this point. A claimant dissatisfied with the carrier's initial determination is entitled to request a carrier review determination. 42 C.F.R. § 405.807. A claimant is entitled to this review by "[a]ny clear expression in writing by a party to an initial determination which indicates, in effect, that he is dissatisfied with such determination by the carrier and wants to appeal the matter further...." 42 C.F.R. § 405.807(d).

The parties to the review "shall have a reasonable opportunity to submit written evidence and contentions as to fact or law relative to the claim at issue." 42 C.F.R. § 405.809. After review, the carrier must send a written determination to the parties. 42 C.F.R. § 405.811 (1994). The review determination must "state[ ] the basis of the determination and advise[ ] the parties of his or her right, to a carrier hearing .... [t]he notice [will] state[ ] the place and manner ,of requesting a carrier hearing as well as the time limit under which a hearing must be requested." 42 C.F.R. § 405.811. In addition, the Blue Cross Provider Manual outlines the steps of the appeal procedure and provides the address of the appropriate department at BCBS to which to send appeal requests.

Essentially, the plaintiffs claim that BCBS and HCFA have waived their right to insist on exhaustion because of their refusals to afford the plaintiffs a hearing over the five year period in which the parties corresponded by mail. Plaintiffs cite four cases in support of their argument that the requirements of exhaustion should be waived for

their appeal: *Klein v. Heckler,* 761 F.2d 1304, 1312 (9th Cir.1985) ("The Secretary cannot complain of failure to exhaust administrative remedies when she refuses to provide the appropriate ones."); *Hinton v. Sullivan,* 737 F.Supp. 232, 237–38 (S.D.N.Y. 1990) ("We find it both ironic and troubling that after over four years of ignoring plaintiff's repeated objections ... the defendant now takes the position that he must first exhaust his administrative remedies...."); *Alexander County Hosp. v. Bowen,* 692 F.Supp. 606, 610 (W.D.N.C.1988) ("Plaintiffs have waited long enough for the bureaucracy to move, and it once again has failed to perform."); *Freeman v. Califano,* CCH Medicare and Medicaid Guide, ¶ 29,626 (E.D.Mich.1979). In each of the above cases, extenuating circumstances or arguably bad faith motives on the part of the Secretary existed. As the following discussion shows, this case is not similar to those cited by the plaintiffs; those cases do not support a waiver of exhaustion under the circumstances of this case.

It is unnecessary to discuss the plaintiffs' communications seriatim in order to resolve this issue. Plaintiffs' letters are easily divided into two groups, those sent to BCBS and those sent to HCFA. On June 25, 1985, the Oakland Diagnostic Laboratory, a member of MAIL, sent a letter to BCBS indicating that it was unhappy with the reimbursement level for tests for electrolytes. However, this letter was not sent to the Government Provider Inquiry Department, the department specifically responsible for handling provider appeals, and the letter does not indicate that the lab has been assigned a specific reimbursement claim by a Medicare beneficiary. Thus, even though this communication arguably meets the "any clear expression in writing" requirement of 42 C.F.R. § 405.807(d), it still fails to include the specific information required by the Act to constitute a request for review determination. The same deficiencies are present in the August 15, 1985 letter to BCBS.

Starting September 27, 1985, the plaintiffs chose to direct their letter writing campaign toward HCFA, which is an appropriate venue in which to pursue a request for a review or

hearing. 42 C.F.R. § 405.807(b); 42 C.F.R. § 405.821(b). The September 27 letter raises a number of issues including the reduction of fees for certain tests. However, this letter simply does not rise to the level of a request for a review determination of specific denials of reimbursements, or for a request for a hearing. This letter is simply a general communication that the plaintiffs are unhappy with certain procedures and would HCFA please make the BCBS remedy the situation. The same holds true for virtually every other communication between the plaintiffs and HCFA. HCFA was given every indication that these letters were in the nature of airing concerns; in any event, the letters do not serve to put HCFA on notice that the plaintiffs were attempting to trigger the administrative review process.

Further indication that none of the above discussed communications were meant to constitute an appeal is found in the November 15, 1989 letter from MAIL to Sigrid Gillian, a Reimbursement Analyst with the BCBS. This letter states:

> On behalf of the Association, I need to state that I disagree with your determination and wish to appeal this matter. I would like to have a hearing where the parties have an opportunity to present witnesses and a full oral discussion of their positions in a hope that we can resolve this matter without more extensive proceedings.

This letter casts doubts on the credibility of the plaintiffs' assertions that they had been seeking review for the preceding four years. This request for a hearing is clearly couched in terms of a first request for a hearing, not just one of many repeated attempts to be heard. Despite the fact that this is a request for a hearing, it still does not comply with the proper procedures because it was sent to the wrong department. As noted above, BCBS, as the carrier, is required to "establish and maintain procedures under which an individual ... is provided with the opportunity for a hearing by the carrier...." 42 C.F.R. § 405.801(a)

(1994). BCBS complied with the provision and set up a process by which appeals would be received and processed. In addition, the record indicates that Charles Smith, the Executive Director of MAIL, who was responsible for all of MAIL's correspondence in this case, was present at a Medicare Part B Advisory Group meeting held August 8, 1989. The minutes of this meeting show that a BCBS representative "discussed the appeals process in great detail and provided a draft booklet which outline[d] the various levels of appeal." Therefore, there is no excuse for a request for appeal sent by MAIL to BCBS to be improper in any way.

Requiring MAIL to comply with these procedures is more than draconian adherence to meaningless procedural rules. Given the fact that MAIL and BCBS are both sophisticated parties, and the voluminous amount of material that BCBS undoubtedly receives on a daily basis, and the fact that MAIL had actual notice as to the exact procedures required for a proper request for review, the November 15, 1989 letter from MAIL to BCBS fails to constitute a proper request for review.

The instant case is similar to *Cardiac Monitoring Servs., Inc. v. Blue Cross & Blue Shield of Ark.,* 807 F.Supp. 1422 (E.D. Ark. 1992). In *Cardiac,* the plaintiffs alleged that they attempted to exhaust their administrative remedies by writing several letters to BCBS of Arkansas. The *Cardiac* court rejected that argument, holding "[a]lthough [plaintiffs] undoubtedly wrote several letters to the defendants requesting reimbursement, its letter writing campaign is not the type of administrative exhaustion envisioned by the Act." *Id.* at 1427.

In conclusion, the letters written by the plaintiffs are not sufficient to constitute either exhaustion of administrative remedies or a basis upon which this Court can waive their failure to exhaust remedies.[8] Additionally, there is nothing in the record to suggest that either BCBS or HCFA acted with any bad faith or dilatory motives.

---

**8.** In light of this conclusion, we do not address the Secretary's argument regarding MAIL's standing.

## IV.

Because the plaintiffs' claim is a challenge to the amount of reimbursement they are receiving and they have failed to exhaust their administrative remedies, the district court correctly dismissed the action for lack of subject matter jurisdiction. The district court is AFFIRMED.