**Ali AKBAR–AFZALI, SSN: 511–90–0920, Plaintiff,**

v.

**John J. CALLAHAN, Ph.D., Acting Commissioner of Social Security, Defendant.**

**Civil Action No. 96–2337–KHV.**

United States District Court, D. Kansas.

May 5, 1997.

Teresa M. Meagher, Law Office of Teresa M. Meagher, Leawood, KS, for plaintiff.

Robert A. Olsen, Office of U.S. Atty., Kansas City, KS, for defendant.

### *MEMORANDUM AND ORDER*

VRATIL, District Judge.

This matter comes before the Court on plaintiff's *Motion For Summary Reversal Or Remand Of The Commissioner's Decision* (Doc. # 9) filed January 3, 1997. Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner's decision to deny benefits under the Social Security Act ("Act") and the Commissioner's finding that plaintiff received overpayments which cannot be waived. For the reasons set forth below, the Commissioner's decision is affirmed.

### Procedural Background

Plaintiff has resided in the United States since 1984, but he did not become a permanent resident alien until August 29, 1991. Plaintiff's daughter, Dr. Azadeh Mosoumeh Afzali, executed an Affidavit of Support in May 1991, sponsoring his entry into the United States and agreeing to support him so that he would not become a public charge.

In the fall of 1991, plaintiff filed an application for supplemental security income

("SSI") benefits based on his age (over 65). The Social Security Administration ("SSA") denied plaintiff's application because it did not indicate that he was a U.S. citizen or permanent resident alien. Plaintiff filed for reconsideration and in July, 1992, the SSA retroactively awarded plaintiff benefits from November 15, 1991 (the date of his application). Plaintiff received these benefits because of age, not disability, and because the SSA determined that plaintiff was in fact a permanent resident alien.

Plaintiff's application stated that no one had sponsored his entry into the United States. The SSA later determined that this statement was not true, and that plaintiff's sponsor (Dr. Afzali) had income and assets in excess of SSI eligibility guidelines. It therefore notified plaintiff that his benefits would cease September 1, 1993. The SSA further advised plaintiff that he had received overpayments of $9,160.07.

Plaintiff timely challenged the denial of further benefits and the SSA's finding concerning the alleged overpayments. On November 30, 1994, an administrative law judge ("ALJ") conducted a hearing at which plaintiff appeared personally and through counsel. Plaintiff's daughter (Elznea Afzali, a college student) served as his interpreter. On April 28, 1995, the ALJ issued a decision which contained the following findings:

1. The claimant has not engaged in substantial gainful activity since being admitted to the United States.

2. The medical evidence establishes that the claimant has the following impairments: very mild degenerative changes in the lumbosacral spine, degenerative changes about the right shoulder and acromioclavicular joint with a small peritendonous calcification adjacent to the tuberosity, calcification of the left interosseous ligament and a mass above the left scrotum.

3. The claimant's testimony and allegations are not found credible when considered in light of the medical signs and findings, history of medical treatment, reports of treating and examining physicians and the inconsistencies in the claimant's testimony, all of which is discussed more

fully in the Rationale section of this decision.

4. The claimant does not have any impairment or impairments, singularly or in combination, which significantly limit his ability to perform basic work related activities; therefore, the claimant does not have a severe impairment (20 C.F.R. § 416.921).

5. The claimant did not become disabled, as defined in 20 C.F.R. § 416.901, (at any age) after his admission to the United States, see 20 C.F.R. § 416.1166a(d)(3).

6. The claimant was not entitled to benefits from November 1991 through September 1993.

7. The claimant was overpaid benefits in the amount of $9,160.07.

8. The claimant was not without fault in causing and accepting the overpayment (20 C.F.R. § 416.552).

9. Recovery of the overpayment is not waived (20 C.F.R. § 404.550).

After considering additional evidence on May 21, 1995, the Appeals Council denied plaintiff's request for review. The ALJ's decision thus stands as the final decision of the Commissioner.

## Standard of Review

■■■ The Commissioner's determination is binding on this Court if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Dixon v. Heckler,* 811 F.2d 506, 508 (10th Cir.1987). The Court's review is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision and whether the Commissioner applied the proper legal standards. *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994). While "more than a mere scintilla," substantial evidence is only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). This standard of review also applies to the question whether waiver of overpaid benefits was appropriate. *See Chapman v. Bowen,* 810 F.2d 151, 152 (8th Cir.1986) (citing *Howard v. Secretary of Health & Human Servs.,* 741

F.2d 4, 8 (2d Cir.1984)) (whether acceptance of overpayment was "without fault" is factual determination reviewed under substantial evidence standard).

## Summary of Facts

Plaintiff is a non-English speaking Iranian immigrant. At the time of the administrative hearing plaintiff was approximately 75 years old. Plaintiff has a high school diploma and he last worked in Iran, as a road contractor and laborer, fifteen years ago. Plaintiff has never worked in the United States.

 The SSA terminated plaintiff's benefits when it determined that his sponsor had resources in excess of the amount which permitted plaintiff to collect social security benefits.[1] On the Affidavit of Support which she executed in May 1991, Dr. Afzali averred that she had $8,500 in savings, $50,000 in personal property, $2,000 in life insurance and $65,000 in real estate. Dr. Afzali also averred that she had annual income of $55,000. After the United States admitted plaintiff as a permanent resident alien, however, Dr. Afzali reported that she and her husband had little or no personal property or savings, and that they each had incurred significant losses in their self-employment.

The SSA realized that Dr. Afzali's conflicting statements had not been reconciled when plaintiff's wife (from whom he is separated) applied for SSI benefits on June 18, 1993. Although Dr. Afzali did not cooperate fully in the ensuing investigation, the SSA obtained enough information to determine that Dr. Afzali and her husband had sufficient income and resources that plaintiff was not eligible for benefits.

1. The resources of Dr. Afzali and her husband are attributed to plaintiff for purposes of determining benefit eligibility. *See* 42 U.S.C. § 1382j (the "deeming rule").

2. The statute provides an exception to the deeming rule if one becomes blind or disabled (at any age) after admission to the United States. *See* 42 U.S.C. § 1382j(f).

3. Plaintiff's reliance on *Luna v. Bowen*, 834 F.2d 161 (10th Cir.1987), to require consideration of

At that point, plaintiff alleged for the first time that he became disabled after his admission to the United States, and argued that the assets of his daughter and son-in-law should not be considered in his case.[2]

## Analysis

 To establish entitlement to disability benefits, plaintiff must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable impairment which can be expected to end in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A); *Talbot v. Heckler,* 814 F.2d 1456, 1459–60 (10th Cir.1987). A five-step sequential evaluation process is used to determine whether an individual is disabled within the meaning of the Act. See 20 C.F.R. §§ 404.1520(a)-(f), 416.920; *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir.1988). If at any step in the process the Commissioner determines that the claimant is disabled or is not disabled, the evaluation ends.

 In this case, the ALJ determined that plaintiff had failed to establish a disability at the second step in the process—in other words, he found that no impairment or combination of impairments significantly limited plaintiff's ability to perform basic work related activities. 20 C.F.R. § 416.921(a). At this stage in the evaluation, medical evidence alone is evaluated.[3]

Substantial evidence supports the ALJ's finding of "no disability." Plaintiff's disability claim rests primarily on his allegations of vision problems and arthritic pain in his back, knee and shoulder. Plaintiff also complains of declining memory, liver dysfunction affecting his digestion, fatigue, generalized weakness, depression, foot cramps, coughing

"all relevant evidence" is unpersuasive. The regulations are clear that at this step in the evaluation a plaintiff's "age, education, and work experience" are not considered. *See* 20 C.F.R. § 416.920(c). Moreover, the record reveals that the ALJ considered both objective medical evidence and plaintiff's subjective testimony regarding his medical conditions—as required by *Luna.* See *Luna,* 834 F.2d at 165. The ALJ determined, however, that plaintiff's testimony was not credible.

spells which cause him to choke and urinary frequency.

 The objective medical evidence does not support plaintiff's claim that he cannot engage in substantial gainful activity, and the Commissioner is not bound by plaintiff's contrary testimony. *Musgrave v. Sullivan,* 966 F.2d 1371, 1376 (10th Cir.1992). It is the Commissioner's position to weigh the evidence and assess plaintiff's credibility, and subjective complaints must be evaluated with due consideration for credibility, motivation and medical evidence. *Frey v. Bowen,* 816 F.2d 508, 516 (10th Cir.1987). The ALJ thoroughly summarized his review of plaintiff's objective medical evidence and subjective complaints, as follows:

> The record reveals the claimant's x-ray of the right shoulder in February 1992 revealed no fractures and normal overall bony density, the September 1993 x-ray of the left ankle contained no evidence of fractures and normal soft tissue contours, the claimant stated in a September 1993 progress note that Naprosyn really helped his condition, the claimant has nearly normal vision according to his October 1993 visual acuity test, had very mild degenerative changes in the lumbosacral spine with osteophytes on August 1994 x-rays but no disc space narrowing, normal spinal alignment, no evidence of vertebral fracture or mass and unremarkable paraspinal soft tissues, stated in August 1994 that he had been running and jogging until recently,[4] had lungs free of active infiltrates and minor thoracic spine degenerative changes in September 1994 x-rays, reported his neck pain was better and canceled x-rays that had been ordered in September 1994, had a negative chest x-ray 6 months prior to September 1994, had no symptoms of tuberculosis in a September 1994 examination and underwent a consultative examination in January 1995 in which the examining physician was unable to determine the etiology of many of the claimant's sub-jective complaints. The claimant had a positive TB skin test in September 1994 in which the examining physician noted it was difficult to known [sic] whether this had any clinical relevance. The claimant was diagnosed as having degenerative changes about the right shoulder and acromioclavicular joint in February 1992 with a small peritendonous calcification adjacent to the tuberosity and a calcification of the left interosseous ligament in September 1993 but was able to jog and run with these conditions through August 1994 by his own admission. The claimant did have a mass with a painful area above the left scrotum in January 1995. However, there was no diagnosis as to the exact etiology of this condition or laboratory or diagnostic testing done. In a letter dated August 1993, P. Tahmooressi, M.D., stated the claimant had degenerative joint disease, urinary frequency and abnormal liver function tests. The undersigned does not give this conclusory statement much weight because there are no supporting laboratory or diagnostic tests, no contemporaneous findings from examinations from this physician or notations of complaints of or observations by this physician of signs or symptoms of these impairments.

> The claimant's testimony is inconsistent with the record because it does not contain evidence that the claimant broke his left arm, has difficulty sleeping, memory difficulties, frequent coughing spells or signs or symptoms of depression. The claimant alleged he could walk only 10 or 15 steps, yet there was evidence that he was jogging and running until August 1994 and no notation or observation by any medical professional thereafter that the claimant's ability to walk was as limited to the degree alleged. Additionally, the claimant admitted that he had hepatitis in the past and it was not being treated currently. The evidence did not indicate that the claimant suffered any adverse side effects from

---

4. Plaintiff's son-in-law, Mr. Tofigh Panah, served as plaintiff's interpreter during this medical examination. After the ALJ issued his decision, Mr. Panah submitted a statement that plaintiff did not state in August 1994 that he recently had been running and jogging. The Appeals Council considered this additional evidence, but denied plaintiff's request for review of the ALJ's decision. The Court finds that substantial evidence supports the ALJ's decision regardless of this additional evidence.

medication, participated in physical therapy on a sustained basis and there was not testimony or affidavits submitted from third parties on the claimant's behalf. In the September 1993 progress note the claimant stated that Naprosyn really helped his condition. As for the claimant's daily activities the undersigned notes no limitations were placed on the claimant's residual functional capacity by any treating or examining physician and the claimant stated he had been running or jogging until August 1994. There was no evidence of any significant change in the claimant's medical condition thereafter which would lead the undersigned to conclude that the claimant's ability to engage in his daily activities had decreased. Given this evidence the undersigned is persuaded that the claimant's impairments were not severe as that term is defined in the regulations, either singularly or in combination. Therefore, the undersigned finds that the claimant was not disabled within the meaning of the Act at anytime after his admission to the United States.

 The evidence does not indicate that plaintiff's impairment(s) were severe or that they precluded all substantial gainful activity. The ALJ properly discounted the report of Dr. Tahmooressi, which consisted of two sentences and did not include any objective examination or test results. A treating physician's opinion may be rejected if his conclusions are not supported by specific findings. *Castellano*, 26 F.3d at 1029 (10th Cir.1994). Indeed, Dr. Tahmooressi did not restrict plaintiff's activities or offer an opinion that plaintiff was disabled. Dr. Chaudhary, who examined plaintiff consultatively, declined to offer an evaluation of plaintiff's ability to do work-related activities due to his many complaints and the language barrier. Plaintiff's x-rays, however, revealed normal spinal alignment, only mild degenerative changes, and no disc space narrowing.

 Nor does the record reflect that plaintiff has a disc problem or a continuing shoulder problem. His x-rays reveal that his arthritis is mild. "Mild degenerative arthritis is not expected to produce disabling pain." *See Blacha v. Secretary of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir.1990). During an eighteen month period (February 1992 to September 1993) plaintiff sought treatment from Dr. Reitz on only four occasions for shoulder discomfort. Plaintiff did see a different doctor (Dr. Carley) for three visits in August and September 1994 during which he mentioned back pain. On August 12, 1994, however, Dr. Carley found that plaintiff had "no pain in the back and ... a fairly good range of motion." Moreover, plaintiff reported to Dr. Carley through his interpreter that he had been active, running and jogging until just before his visit on that date.

 A lumbosacral spine x-ray in August 1994 revealed "very mild" degenerative changes and a chest x-ray in September 1994 revealed "minor" degenerative changes in plaintiff's thoracic spine. There was no disc space narrowing. Moreover Dr. Reitz prescribed Naprosyn for plaintiff's shoulder which plaintiff reported "really helps." Such an impairment cannot be disabling within the meaning of the Act. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir.1995) (remediable impairment is not disabling).

Plaintiff's vision complaints are contradicted by objective evidence. Plaintiff's eyesight is 20/40 and 20/30 and examination reports make no note of any complaint of eye pain.

Finally, the objective evidence reveals that plaintiff's positive PPD test did not necessarily have clinical relevance to possible tuberculosis, because plaintiff reported a history of BCG.[5] Plaintiff advised Dr. Carley that he had a negative chest x-ray in 1994 when he was in Iran. The record does not include any diagnostic test result or laboratory report which substantiates plaintiff's claim that he has abnormal liver function or chronic hepati-

5. BCG vaccine is "a preparation used as an active immunizing agent against tuberculosis, consisting of a dried, living culture of the Calmette–Guerin strain of *Mycobacterium bovix*, which is grown on a suitable medium from a seed strain of known history that has been maintained to preserve its capacity for conferring immunity." *Dorland's Illustrated Medical Dictionary*, 1431 (26th ed.1985).

tis. Accordingly, the Court finds that substantial evidence supports the ALJ's findings and it agrees that plaintiff received overpayments totaling $9,160.07.

Plaintiff argues that recovery of this amount should be waived because he was without fault in incurring the overpayment. To avoid recovery of an overpayment, an overpaid individual must show (1) that he was without fault; and (2) that adjustment or recovery of the overpayment would be against equity and good conscience. 42 U.S.C. § 404(b).

Federal regulations define what it means to be "without fault" in this context, as follows:

> The overpaid individual ... is not relieved of liability and is not *without fault* solely because the Social Security Administration may have been at fault in making the overpayment.... The Social Security Administration considers the individual's understanding of the reporting requirements, the agreement to report events affecting payments, knowledge of the occurrence of events that should have been reported, efforts to comply with the reporting requirements, opportunities to comply with the reporting requirements, understanding of the obligation to return checks which were not due, and ability to comply with the reporting requirements (e.g., age, comprehension, memory, physical and mental condition). In determining whether an individual is without fault based on a consideration of these factors, the Social Security Administration will take into account any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) the individual may have. Although the finding depends on all of the circumstances in the particular case, an individual will be found to have been at fault in connection with an overpayment when an incorrect payment resulted from one of the following:
>
> (a) Failure to furnish information which the individual knew or should have known was material;
>
> (b) An incorrect statement made by the individual which he knew or should have known was incorrect (this includes the in-

dividual's furnishing his opinion or conclusion when he was asked for facts), or

> (c) The individual did not return a payment which he knew or could have been expected to know was incorrect.

20 C.F.R. § 416.552.

The ALJ found that plaintiff was not without fault in incurring the overpayment because he knowingly made an incorrect statement on his application: that he had not been sponsored for admission to the United States. Although he has resided in the United States since 1984, plaintiff testified that he does not speak or read any English. The record reflects, however, that plaintiff had an interpreter available at all relevant times who could read, comprehend and speak English. The record also reflects that plaintiff (with or without assistance) has understood and pursued his claim for SSI benefits through inquiry, application, denial, reconsideration, request for waiver of the overpayment, hearing, Appeals Council review, and judicial review. In addition, plaintiff apparently navigated Immigration and Naturalization Service requirements for admittance to the United States. To become legally admitted for permanent residence, plaintiff needed a sponsor to show that he would not become a public charge. As a consequence, the income and resources of his sponsor and her spouse are deemed to be his. They preclude him from receiving SSI benefits.

Substantial evidence supports the finding that plaintiff was not without fault in causing the overpayment, and the Court finds that recovery of the overpayment is not against equity and good conscience. Plaintiff had a fair hearing and full administrative consideration in accordance with applicable statutes and regulations. Accordingly, the Commissioner's decision should be affirmed.

**IT IS THEREFORE ORDERED** that plaintiff's *Motion For Summary Reversal Or Remand Of The Commissioner's Decision* (Doc. # 9) filed January 3, 1997, should be and hereby is **OVERRULED**.